1 | **WO**
2
3
4
5
6 | IN THE UNITED STATES DISTRICT COURT
7 | FOR THE DISTRICT OF ARIZONA
8

| | |
|---|---|
| ANDREW HALL, individually and on behalf of all others similarly situated, ) ) | No. CV-08-1821-PHX-GMS |
| Plaintiff, ) ) | **ORDER** |
| vs. ) ) | |
| MEDICIS PHARMACEUTICAL CORP., et al., ) ) ) | |
| Defendants. ) ) | |
| STEAMFITTERS LOCAL 449 PENSION FUND, individually and on behalf of all others similarly situated, ) ) ) ) | No. CV-08-1870-PHX-DKD |
| Plaintiff, ) ) | |
| vs. ) ) | |
| MEDICIS PHARMACEUTICAL CORP., et al., ) ) ) | |
| Defendants. ) ) | |
| DARLENE OLIVER, individually and on behalf of all others similarly situated, ) ) | No. CV-08-1964-PHX-JAT |
| Plaintiff, ) ) | |
| vs. ) ) | |
| MEDICIS PHARMACEUTICAL CORP., et al., ) ) ) | |
| Defendants. ) ) | |

1  Pending before the Court are two motions to consolidate cases, appoint lead plaintiff, and appoint lead counsel, the first filed by Steamfitters Local 449 Pension Fund ("Steamfitters") (Dkt. # 6) and the second filed by Steven Rand (Dkt. # 9). For the following reasons, the Court grants both motions with respect to consolidation, and otherwise denies Steamfitters' motion and grants Rand's motion.

## BACKGROUND

There are currently three class action complaints filed in this District against Defendants: *Hall v. Medicis Pharmaceutical Corp., et al.*, No. CV-08-01821; *Steamfitters Local 449 Pension Fund v. Medicis Pharmaceutical Corp., et al.*, No. CV-08-01870; and *Oliver v. Medicis Pharmaceutical Corp., et al.*, No. CV-08-01964. Each of the complaints asserts violations of the federal securities laws stemming from Defendants' allegedly false and misleading financial statements about its revenue and earnings. According to the complaints, Defendants' actions caused members of the class to purchase securities at artificially inflated prices. Each plaintiff alleges that Defendants' actions violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), *see* 15 U.S.C. §§ 78j(b), 78t(a) (Supp. 2008); *see also* 17 C.F.R. § 240.10b-5.

## DISCUSSION

Steamfitters and Rand have both moved the Court to consolidate the three cases, and they each request that they be designated lead plaintiff and that their counsel be appointed lead counsel. The Court will address each of these requests in turn.

**I.  Consolidation**

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate "[i]f actions before the court involve a common question of law or fact." Likewise, under the PSLRA, consolidation is appropriate "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. § 78u-4(a)(3)(B)(ii) (Supp. 2008).

The three cases at issue here all involve common questions of both law and fact, and they all assert substantially the same claim. All three center on the nature of the information provided by Defendants in their press releases and fiscal reports between October 30, 2003, and September 24, 2008, Defendants' subsequent disclosure that its financial statements would need to be restated, and whether Defendants' conduct violated provisions of the securities laws. No party has opposed consolidation of these cases, and the Court finds consolidation appropriate under these circumstances. *See Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1150 (N.D. Cal. 1999) ("It seems obvious that fifty-four separate class actions predicated on the same set of misstatements by corporate officials, causing an artificial inflation and then a corrective drop in share prices, present common questions of fact."); *see also In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 431 (E.D. Va. 2000) ("[C]onsolidation is often warranted where multiple securities fraud class actions 'are based on the same public statements and reports.'") (quoting *Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992)). Steamfitters' and Rand's motions to consolidate are therefore granted.

The District's local rules provide that assignment of the consolidated case should be consistent with the extent to which substantive matters have been considered in any given case, which judge has the most familiarity with the issues of the cases, whether any given case is reasonably viewed as the lead or principal case, and any other factor advancing the interests of judicial economy. *See* LRCiv 42.1(a)(4). Here, all of the cases are at a fairly early stage and no judge has considered substantive matters. Given that this Court has considered the instant motions and is currently assigned the case that was filed first, the Court assigns the consolidated case to itself under case number CV-08-01821-PHX-GMS and under the case name *In re Medicis Pharmaceutical Corp. Securities Litigation*.

## II.  Lead Plaintiff

In a PSLRA class action, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).

Courts are to "adopt a presumption" that the most adequate plaintiff is the plaintiff who: (1) has either filed a complaint or moved to be named lead plaintiff, (2) has the largest financial interest in the relief sought by the class, and (3) satisfies the requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and that "the representative parties will fairly and adequately protect the interests of the class." If a party becomes the presumptive lead plaintiff, that presumption may be rebutted only upon "proof" that the party "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).[1]

Here, both Steamfitters and Rand meet the first requirement for becoming the presumptive lead plaintiff, as both have made qualified motions. Of the two, Rand has the largest financial interest in the relief sought, as he asserts damages in the amount of $21,091, while Steamfitters seeks a nominal amount less – $20,690. Steamfitters conceded at oral argument that it does not contest the accuracy of Rand's damage calculation. Thus, if Rand satisfies the relevant requirements of Federal Rule of Civil Procedure 23, he will become the presumptively most adequate plaintiff. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("[T]he district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on *that* plaintiff and determine . . . whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'"). "This inquiry need not be as 'searching as

---

[1] Both establishing the presumption and rebutting the presumption require a determination of whether a given plaintiff will "fairly and adequately protect the interests of the class." The Ninth Circuit has resolved this apparent incongruity by holding that "when the district court makes its initial determination, it must rely on the presumptive lead plaintiff's complaint and sworn certification; there is no adversary process to test the substance of those claims. At the [rebuttal] stage, the process turns adversarial and other plaintiffs may present evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy." *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) (citing *In re Cendant Corp. Litigation*, 264 F.3d 201, 264 (3d Cir. 2001)).

- 4 -

the one triggered by a motion for class certification,' because the inquiry focuses solely on whether the person will be an appropriate class representative, and not whether the class may ultimately be certified." *MicroStrategy*, 110 F. Supp. 2d at 435 (quoting *Switzenbaum v. Orbital Scis. Corp.*, 187 F.R.D. 246, 250 (E.D. Va. 1999)); *see also Aronson*, 79 F. Supp. 2d at 1158 ("At the lead plaintiff selection stage, all that is required is a 'preliminary showing' that the lead plaintiff's claims are typical and adequate.") (quoting *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 587 (N.D. Cal. 1999); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997)).

Rand has made a sufficient preliminary showing that he has met the typicality and adequacy prongs of Rule 23. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). This is not an exceedingly exacting test, for "[u]nder [Rule 23's] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). In this case, Rand's claims arise from the same course of events as those of the broader class, namely Defendants' allegedly false and misleading press releases and financial reports issued between October 30, 2003, and September 24, 2008. Rand also asserts violations of the same sections of the federal securities laws, and thus his claim is based on the same legal arguments as the rest of the class. Rand has therefore made a sufficient showing of typicality under Rule 23.

Rand also satisfies the adequacy test. "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Here, there is no conflict of interest with other class members. There is likewise no indication that Rand, or his counsel, will not vigorously prosecute the action on behalf of the class. Indeed, Rand has indicated

1 his willingness to serve as the class representative and to testify at deposition and at trial, he
2 has secured competent counsel, and he has alleged a significant pecuniary interest in
3 pursuing the claim. Rand therefore satisfies the adequacy prong of Rule 23.

4 Because Rand has satisfied all of the requirements of 15 U.S.C. § 78u-
5 4(a)(3)(B)(iii)(I), he is entitled to the presumption that he is the most adequate plaintiff to be
6 appointed lead plaintiff. As noted, that presumption may be rebutted only upon "proof" that
7 Rand "will not fairly and adequately protect the interests of the class" or "is subject to unique
8 defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C.
9 § 78u-4(a)(3)(B)(iii)(II). It is at this point in the inquiry that Steamfitters' objections should
10 be addressed. *See Cendant*, 264 F.3d at 263-64 ("[T]he threshold determination of whether
11 the movant with the largest financial losses satisfies the typicality and adequacy requirements
12 should be a product of the court's independent judgment, and . . . arguments by members of
13 the purported plaintiff class as to why it does not should be considered only in the context
14 of assessing whether the presumption has been rebutted.").

15 Steamfitters asserts that Rand is atypical because he purchased and sold put options,
16 as opposed to Defendants' underlying securities. However, Steamfitters has explicitly
17 declined to offer any evidence that Rand's specific options are themselves atypical;
18 Steamfitters only argues that the claims of all options holders are inherently atypical such
19 that they cannot represent common stockholders. There are some cases that disfavor making
20 options purchasers lead plaintiffs because of valuation differences between options and
21 common stock, as well as the potential that the defendant could assert unique defenses
22 against the options holder. *See Andrada v. Atherogenics, Inc.*, No. 05 Civ. 00061, 2005 WL
23 912359, at *5 (S.D.N.Y. Apr. 19, 2005) ("Were South Ferry to be appointed lead plaintiff
24 for the entire class, factual issues specific to South Ferry in determining the precise value of
25 the options – e.g., the maturity, the volatility of the price of the Atherogenics stock, the level
26 of short term interest rates, and the competitive structure of the market in which the options
27 are traded – would likely 'threaten to become the focus of the litigation.'") (quoting *Weikel
28 v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 391 (D.N.J. 1998)).

1    However, many courts have appointed options traders as lead plaintiffs to represent
2 the interests of common stockholders. *See, e.g.*, *In re Scientific-Atlanta, Inc. Sec. Litig.*, 571
3 F. Supp. 2d 1315, 1330 (N.D. Ga. 2007); *In re Priceline.com Sec. Litig.*, 236 F.R.D. 89, 99
4 (D. Conn. 2006) (citing *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123-24
5 (S.D.N.Y. 2001); *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 371 (D. Del. 1990);
6 *Moskowitz v. Lopp*, 128 F.R.D. 624, 631 (E.D. Pa. 1989)); *In re Adobe Sys., Inc. Sec. Litig.*,
7 139 F.R.D. 150, 155 (N.D. Cal. 1991) (finding that the typicality requirement of Rule 23 was
8 met for options traders, and appointing them class representatives, because there was no
9 arguably unique challenge to standing for options traders and that "since the value of options
10 is directly related to the value of common stock, defendants had reason to expect that option
11 traders would rely on their alleged misrepresentations").

12    Given that there is a divergence of authority on the subject, and given Steamfitters'
13 concession at oral argument that there are no defenses applicable to the common stock
14 holders that are not also applicable to the options holders, the Court is reluctant to disqualify
15 Rand simply because he trades in options. Had Steamfitters adduced some evidence specific
16 to Rand suggesting that the nature of his options, the history of their purchase and sale, or
17 some other factor made him inadequate to represent the class, then the Court might have
18 occasion to disqualify him. In the absence of any such specific evidence, Steamfitters has
19 not met its burden to provide "proof" that Rand will not fairly and adequately protect the
20 interests of the class or is otherwise subject to unique defenses that would render him
21 incapable of doing so.[2] *See In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 263 (D.D.C.

---

[2] Steamfitters cites *Laventhall v. Gen. Dynamics Corp.*, 704 F.2d 407, 414-15 (8th Cir. 1983), for the proposition that options holders do not have standing to sue a corporation trading only in common stock. (Dkt. # 19 at 6.) The Court finds merit in Judge Posner's explanation that *Laventhall* is circumscribed by the nature of fiduciary obligations in insider-trading cases. *See Fry v. UAL Corp.*, 84 F.3d 936, 938 (7th Cir. 1996). Regardless, other circuits disagree with *Laventhall*, *see, e.g.*, *id.* at 938-39; *Deutschman v. Beneficial Corp.*, 841 F.2d 502, 506-07 (3d Cir. 1988), and authority within this Circuit has likewise taken a different view, *see Adobe*, 139 F.R.D. at 155 ("Clearly, since the value of options is directly related to the value of common stock, defendants had reason to expect that option traders

2006) (rejecting a party's challenge to a prospective lead plaintiff because the movants "offer[ed] no proof" of how potential conflicts would become actual conflicts and because their arguments were "too speculative and hypothetical to rebut the presumption").

Nor can the Court disregard the statutory scheme merely because it may believe that Steamfitters reflects the putative plaintiff class better than Rand, or even because the Court may believe that Steamfitters would do a better job litigating the case. "That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Cavanaugh*, 306 F.3d at 732.

Steamfitters also seems to argue, in response to Rand's motion, that options holders are outside the purported plaintiff class – despite the fact that Steamfitters conceded at oral argument that options holders would be members of the class under a consolidated complaint. Regardless, Steamfitters' complaint purports to bring an action on behalf of all purchasers of Medicis "securities" during that time. (No. CV-08-01870, Dkt. # 1 at 1.) Steamfitters' motion to consolidate the actions likewise provides that the "three putative securities class actions [are] brought on behalf of all those who purchased or otherwise acquired [Medicis] securities between October 30, 2003 and September 23, 2008." (Dkt. # 7 at 1.) Put options are securities for the purpose of the securities laws, 15 U.S.C. § 78c(a)(10) (Supp. 2008); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750-51 (1975), and Steamfitters' complaint does not limit the plaintiff class to the purchasers of securities *issued by* Medicis. Rather, Steamfitters describes a class that includes all those who acquired Medicis securities, and Rand falls within that class.

---

would rely on their alleged misrepresentations. Plaintiffs have standing under Rule 10b-5 as options traders."). The Court therefore finds that, to the extent that Steamfitters is asserting that *Laventhall* should block the appointment of Rand as lead plaintiff, it has not met its burden of rebutting the statutory presumption that Rand should be lead plaintiff.

- 8 -

Indeed, courts typically treat both stockholders and options holders as members of the same plaintiff class. *See MicroStrategy*, 110 F. Supp. 2d at 440 ("[T]he claims of options-holders and stockholders are in most cases sufficiently similar that they should be consolidated 'in form and in fact,' and thus litigated by the same lead plaintiff and lead counsel.") (quoting *In re Orbital Sciences Corp. Sec. Litig.*, 188 F.R.D. 237, 240 (E.D. Va. 1999) ("Even if the shareholders and the optionholders are not identically situated in every respect, they share a mutual interest in having the Court resolve these questions about whether the Defendants made any misstatements or omissions, whether they did so with scienter, and whether the price of [the defendant's] common stock became artificially inflated as a result. The efficiency of resolving these and other questions at once in a single proceeding is beyond serious debate. . . . Under these circumstances, the only appropriate solution is to consolidate the two actions both in form and in fact.") (internal citations omitted)); *Priceline.com*, 236 F.R.D. at 93, 98-99 (rejecting the argument that a plaintiff who "traded almost exclusively in put options" could not be lead plaintiff, and appointing him as such, even though the plaintiffs sought to certify a class of "all persons who purchased or otherwise acquired securities of [the defendant]"); *cf. Fry v. UAL Corp.*, 84 F.3d 936, 938 (7th Cir. 1996) (upholding the presence of options traders in a class action including common stockholders).

Further, by Steamfitters' own standard, Rand is a member of the plaintiff class. In its motion to be appointed lead plaintiff, Steamfitters identified four "questions of law and fact common to the members of the class which predominate over questions which may affect individual class members": (1) whether Defendants "violated the 1934 Act"; (2) whether Defendants "omitted and/or misrepresented material facts"; (3) whether Defendants' statements "omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading"; and (4) whether Defendants "knew or recklessly disregarded that their statements were false and misleading." (Dkt. # 7 at 5.) These questions are just as applicable to Rand as to Steamfitters, and Rand has the same incentive to establish these four points as Steamfitters (indeed, for the purposes of the

- 9 -

1 PSLRA, Rand has more of an incentive, as he is alleged to have suffered a greater loss).
2 Thus, even under Steamfitters' own enunciation of the nature of the purported class, Rand
3 is a member.

4 Steamfitters also makes much of the fact that it is an institutional investor and that
5 Congress intended to favor the involvement of institutional investors in securities class
6 actions. However, the Ninth Circuit has made clear that the plain language of the PSLRA
7 does not permit the Court to favor Steamfitters over another plaintiff with a greater financial
8 stake merely because Steamfitters is an institutional investor. Rather, the Court must follow
9 the statutory test as written:

> The court discounted the significance of the statutory presumption based on its understanding that the presumption was an effort by Congress to encourage the involvement of institutional investors in securities class actions. . . . This, of course, was error. Congress enacts statutes, not purposes, and courts may not depart from the statutory text because they believe some other arrangement would better serve the legislative goals. Here, the [PSLRA] provides in categorical terms that the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy.

*Cavanaugh*, 306 F.3d at 730. For the same reason, the Court cannot rely on the fact that the difference between Steamfitters and Rand is only a few hundred dollars. Rand has a greater financial stake in the controversy, however minute that greater stake may be in relation to the overall damage claim. He otherwise meets the requirements of Rule 23, and Steamfitters has failed to provide proof that Rand will not fairly and adequately protect the interests of the class or is otherwise subject to unique defenses that would render him incapable of doing so. Rand's motion to be appointed lead plaintiff is therefore granted, and, for the same reasons, Steamfitters' motion is denied.

### III. Lead Counsel

Once a lead plaintiff has been designated, that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "The statute vests the initial selection with the plaintiff; the court's role is limited to approval of that choice." *Aronson*, 79 F. Supp. 2d at 1159. No objection has been raised as to the adequacy of Rand's counsel. Rand has provided a resume for his selected firm, and the court is satisfied that the firm is qualified and experienced, and that it will adequately represent the interests of the class. Rand's motion to appoint its selected firm as lead counsel is therefore granted. By necessity, Steamfitters' analogous motion is denied.

## CONCLUSION

**IT IS ORDERED** that Steamfitters' motion to consolidate, appoint lead plaintiff, and appoint lead counsel (Dkt. # 6) is **GRANTED** with respect to consolidation and **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Rand's motion to consolidate, appoint lead plaintiff, and appoint lead counsel (Dkt. # 9) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall consolidate the following three cases: *Hall v. Medicis Pharmaceutical Corp., et al.*, No. CV-08-1821; *Steamfitters Local 449 Pension Fund v. Medicis Pharmaceutical Corp., et al.*, No. CV-08-1870; and *Oliver v. Medicis Pharmaceutical Corp., et al.*, No. CV-08-1964. The cases will be consolidated before this Court under Case No. CV-08-01821-PHX-GMS as *In re Medicis Pharmaceutical Corp. Securities Litigation*. The parties are hereby directed to utilize that name and case information for all future filings.

DATED this 10th day of March, 2009.

*/s/ H. Murray Snow*
G. Murray Snow
United States District Judge