QUARLES & BRADY LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, Arizona 85004-2391
Telephone (602) 229-5200
Don P. Martin (#004232)
don.martin@quarles.com
Nicole France Stanton (#020452)
nicole.stanton@quarles.com

ROBERT HUBBELL, CA SBN 100904
(admitted pro hac vice)
RHubbell@gibsondunn.com
ALEXANDER MIRCHEFF, CA SBN 245074
(admitted pro hac vice)
AMircheff@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone:   (213) 229-7000
Facsimile:   (213) 229-7520

Attorneys for Defendant
Ernst & Young LLP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE MEDICIS PHARMACEUTICAL CORP. SECURITIES LITIGATION | Master File No. CV-08-01821-PHX-GMS<br><br>**ERNST & YOUNG LLP'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

    I.    Plaintiffs Have Failed To Plead Particular Facts As to EY As Required By The PSLRA .................................................................................. 2

    II.   The Opposition Repeats Arguments Previously Rejected By This Court In Granting The Prior Motion To Dismiss ................................................ 3

        A.    Allegations of GAAP Violations Do Not Raise A Strong Inference of Scienter.................................................................................. 3

        B.    The "Confidential Witness" Allegations Are Weaker Than Those Previously Found To Be Insufficient............................................. 5

        C.    Plaintiffs Ignore the Prohibition on Using Expert *Opinion* Testimony to Satisfy the PSLRA's Requirement of Particularized *Facts* ........................................................................... 6

    III.  Plaintiffs Have Not Addressed—And Therefore Concede—EY's Argument That Motives Unique to Medicis Cannot Not Support An Inference Of Scienter On EY's Part ................................................................ 7

    IV.  The Most Cogent Inference Is That EY's Audit Opinions Were Innocently Misstated........................................................................................ 8

CONCLUSION....................................................................................................................... 9

i

# TABLE OF AUTHORITIES

Page(s)

### Cases

*DiLeo v. Ernst & Young,*
    901 F.2d 624 (7th Cir. 1990)..................................................................................3

*DSAM Global Value Fund v. Altris Software, Inc.,*
    288 F.3d 385 (9th Cir. 2002)............................................................................2, 5, 6

*Fin. Acquisition Partners LP v. Blackwell,*
    440 F.3d 278 (5th Cir. 2006)...............................................................................6, 7

*Gompper v. VISX, Inc.,*
    298 F.3d 893 (9th Cir. 2002)..................................................................................2

*In re Cadence Design Sys., Inc. Sec. Litig.,*
    654 F. Supp. 2d 1037 (N.D. Cal. 2009)..................................................................3

*In re Downey Sec. Litig.,*
    2009 WL 2767670 (C.D. Cal. Aug. 21, 2009).......................................................3

*In re Silicon Graphics Inc. Sec. Litig.,*
    183 F.3d 970 (9th Cir. 1999)..................................................................................2

*In re Van Wagoner Funds, Inc., Sec. Litig.,*
    382 F. Supp. 2d 1173 (N.D. Cal. 2004).................................................................7

*In re Vantive Corp. Sec. Litig.,*
    283 F.3d 1079 (9th Cir. 2002)............................................................................3, 5

*In re Wash. Mut. Inc. Sec. Litig.,*
    2009 U.S. Dist. LEXIS 99727 (W.D. Wash. Oct. 27, 2009).................................7

*In re Worlds of Wonder Sec. Litig.,*
    35 F.3d 1407 (9th Cir. 1994)..................................................................................7

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.,*
    380 F.3d 1226 (9th Cir. 2004)................................................................................7

*Reiger v. PricewaterhouseCoopers LLP,*
    117 F. Supp. 2d 1003 (S.D. Cal. 2003)...............................................................3, 8

*Rubke v. Capitol Bancorp. Ltd.,*
    551 F.3d 1156 (9th Cir. 2009)................................................................................3

*South Ferry LP, #2 v. Killinger,*
    542 F.3d 776 (9th Cir. 2008)..................................................................................2

*Zucco Partners, LLC v. Digimarc Corp.,*
    552 F.3d 981 (9th Cir. 2009).............................................................................2, 3

**Table of Authorities**
**(Continued)**

Page(s)

**Statutes**

15 U.S.C. § 78u-4(b)(2) ................................................................................................2

**Rules**

Fed. R. Civ. P. 10 ...........................................................................................................6

**ERNST & YOUNG LLP'S MOTION TO DISMISS**   Master File No. CV-08-01821-PHX-GMS
**PLAINTIFFS' SECOND AMENDED COMPLAINT**

# INTRODUCTION

Plaintiffs' opposition brief does nothing to cure the deficiencies in the amended complaint. Instead, it merely repeats arguments that this Court rejected when it dismissed the prior complaint. Plaintiffs offer no explanation why these discredited arguments should fare any better in face of the current motion—especially given that the amended complaint has reduced the scant level of detail relating to EY's purported scienter. Plaintiffs have twice failed to meet their pleading burden under the PSLRA. The amended complaint should be dismissed with prejudice.

Despite its length, the arguments in the opposition that relate to EY are simple, few, and familiar:

- Plaintiffs argue that the applicability of FAS 48 to replacement of expired product was so obvious that the failure to defer the full sales price of estimated returns establishes scienter (Opp. at 32)—a proposition squarely addressed and rejected by the Court in its prior order (Order at 8-15);

- Plaintiffs argue that EY's recommendation that Medicis establish a reserve for short-dated inventory *that had not yet been sold* supports scienter (Opp. at 32)—an assertion also rejected in the prior order (Order at 23); and

- Plaintiffs argue that routine interactions between EY and Medicis personnel support scienter (Opp. at 32)—interactions previously considered by the Court in concluding that the more cogent and compelling inference was that EY was merely performing an audit rather than perpetrating a fraud (Order at 19-21, 23-24).

The opposition's only "new" argument is a retread of Plaintiffs' contention that the applicability of FAS 48 was so obvious that the failure to apply it correctly is evidence of fraudulent intent. In support of this contention, Plaintiffs allege that a professor of accounting believes that Medicis's original accounting was "clearly" inappropriate—an opinion that says nothing more than that GAAP was misapplied. But even that unremarkable proposition can provide no support for scienter because Plaintiffs cannot substitute opinions for the particularized factual allegations required by the PSLRA.

In the absence of detailed facts that bear specifically upon EY's state of mind, Plaintiffs have fallen far short of their pleading burden under the PSLRA. The most cogent

1

inference to be drawn from the amended complaint as a whole is that Medicis innocently misapplied GAAP in its effort to account for the economic reality of its exposure for replacement of expired product.

## ARGUMENT

### I. Plaintiffs Have Failed To Plead Particular Facts As to EY As Required By The PSLRA

In their opposition, Plaintiffs attempt to manufacture a dispute as to the relevant pleading standard—a standard that is well-settled and rooted in the PSLRA. Under the PSLRA, Plaintiffs must "state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind," *i.e.*, scienter. 15 U.S.C. § 78u-4(b)(2) (emphasis added). To do so, Plaintiffs must plead "no less than a degree of recklessness that strongly suggests actual intent," by providing, "in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 973, 979 (9th Cir. 1999). This requires particularized factual allegations establishing that EY employed practices "so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts." *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002).[1]

---

[1] Plaintiffs again trot out their tired argument—implicitly rejected by this Court previously—that prior law was superseded by the Supreme Court's holding in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). Opp. at 20-21, 33; *see also* Opp. to First EY MTD at 13, 24. Plaintiffs reach this result by overstating the holding of *South Ferry LP, #2, v. Killinger*, 542 F.3d 776 (9th Cir. 2008). In *South Ferry*, the Circuit conjectured that "perhaps" certain of its prior authorities (though, notably, not *DSAM Global Value Fund*, which controls the result here) had been "too demanding" in their scienter analysis. However, the *South Ferry* court stopped short of concluding that those prior authorities had been overruled, and merely remanded the matter for further consideration in light of *Tellabs*. Since then, when directly confronting the question, the Circuit has emphatically held that "*Tellabs* does not materially alter the particularity requirements for scienter claims established in [the Circuit's] previous decisions, but instead only adds an additional 'holistic' component to those requirements." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 987 (9th Cir. 2009). Of course, even before *Tellabs*, the Circuit had held that "courts should consider all the allegations in their entirety." *E.g., Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002). And when performing holistic review post-*Tellabs*, the

[Footnote continued on next page]

2

Contrary to Plaintiffs' suggestion (Opp. at 32-33), this is not a different pleading standard for auditors than for other defendants. To meet the "particular facts" requirement of the PSLRA, a plaintiff must allege facts specific to the role of the auditor, i.e., an outside professional who is not management, who does not control the operations of the company, and who does not maintain its books and records. *See, e.g., DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *Reiger v. PricewaterhouseCoopers LLP*, 117 F. Supp. 2d 1003, 1007-08 (S.D. Cal. 2003). Here, Plaintiffs have not even attempted to allege facts that reflect EY's different role and access to information. If the PSLRA's mandate of particularized pleading is to be given any force, it is plainly insufficient for Plaintiffs to lump the outside auditor with all other defendants and to assume that all facts apply to all parties without discrimination. EY has not suggested that it be held to a different standard under the PSLRA; rather, it has demonstrated that Plaintiffs have failed to satisfy the clear requirement that they plead facts *particular to the alleged scienter of the outside auditor*. Their failure to do so is fatal to the Section 10(b) claim.

## II. The Opposition Repeats Arguments Previously Rejected By This Court In Granting The Prior Motion To Dismiss

### A. <u>Allegations of GAAP Violations Do Not Raise A Strong Inference of Scienter</u>

Much of Plaintiffs' opposition is devoted to reciting the premise that the application of FAS 48 was so obvious that any other interpretation of the facts was fraudulent. Opp. at 3-7, 19-31. This proposition was explicitly rejected by the Court in its opinion granting the prior

---

[Footnote continued from previous page]
Circuit has not hesitated to dismiss allegations that were vague and shed no light on the defendant's mental state. *See, e.g., Zucco*, 552 F.3d at 999-1000; *Rubke v. Capitol Bancorp. Ltd.*, 551 F.3d 1156, 1166 (9th Cir. 2009); *see also In re Cadence Design Sys., Inc. Sec. Litig.*, 654 F. Supp. 2d 1037, 1050 (N.D. Cal. 2009) (inference of scienter was "fatally undermined by Plaintiffs' inability to connect any of the Individual Defendants, or any particular person at Cadence, with . . . knowledge of the specific facts that rendered the accounting classifications incorrect"); *In re Downey Sec. Litig.*, 2009 WL 2767670, at *8 (C.D. Cal. Aug. 21, 2009) (allegations must have at least some factual particularity shedding light on the defendants' mental state, else it would be impossible to "conclude that the allegations rest on more than hind-sight speculation" (citing *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1089 (9th Cir. 2002)). So Plaintiffs are demonstrably incorrect when they contend that pre-*Tellabs* authorities are irrelevant.

motion to dismiss. Order at 8-15. The lengthy argument in the opposition is, like the amended complaint itself, premised on the deliberate refusal to acknowledge the distinction between a general right of return, which is addressed by FAS 48, and the replacement of expired product with fresh product, which is not. The Court addressed this distinction head-on in its prior ruling when it stated that in light of the "lack of definitive guidance with respect to setting reserves for *exchanges of expired products* . . . the error cannot be called the result of 'an egregious refusal to see the obvious.'" Order at 15 (emphasis added).

The distinction between a general right of return and replacement of expired product with fresh product is crucial. Because Medicis was not at risk of losing the revenue of the original sale, it was reasonable for Medicis to believe that GAAP required it to accrue only the estimated cost of future product exchanges. As this Court has already noted, using replacement cost "reflected the exchanges' actual economic impact." Order at 15. Plaintiffs make no attempt to rebut this holding, except to call its underlying rationale "misguided" and "sophistry." Opp. at 30.

Plaintiffs also devote much argument to explaining why the exchange accounting exception of footnote 3 of FAS 48 did not apply to Medicis's replacement of expired product with fresh product. Of course, like the rest of FAS 48, footnote 3 does not specifically address the limited right of replacement granted to Medicis's customers, nor do Plaintiffs contend otherwise. But even if it did, it was reasonable to assume that the replacements at issue did involve products of like kind and quality. In processing replacements, Medicis was assessing whether the customer was exchanging expired product for unexpired units *of the same product* (e.g., Restalyne for Restalyne)—as opposed to *a different product* (e.g., Restalyne for Loprox). Though this approach was later deemed to be erroneous, at the time it was shared by others in the pharmaceutical industry and was reasonable. *See* Mot. at 6-7. Particularly in the absence of guidance on this question (and Plaintiffs no longer pretend that any such guidance existed) the non-marketability of the expired products does nothing to indicate scienter. Likewise, it would have been reasonable to assume that the wholesalers to whom Medicis sold product were its own "ultimate customers" under footnote 3. But even if

4

Plaintiffs are correct that the wholesalers were not Medicis's ultimate customers, the facts in their complaint yield nothing more than an inference that this secondary element of footnote 3 was innocently misapplied—again, far short of what Plaintiffs need to show scienter. *See, e.g., DSAM Global Value Fund*, 288 F.3d at 389-91.

As before, nothing in Plaintiffs' amended complaint negates the far more plausible inference that EY and Medicis believed that use of replacement cost most appropriately described the actual impact of the exchanges. That the narrow scope of FAS 48 did not perfectly capture this concept merely proves EY's point that the proper accounting treatment was far from obvious.[2]

### B. The "Confidential Witness" Allegations Are Weaker Than Those Previously Found To Be Insufficient

The Court found the allegations of confidential witnesses in the prior complaint to be an insufficient basis for inferring scienter as to EY. The amended complaint has reduced the number of confidential witness allegations as to EY. Remarkably, the opposition makes no effort to explain how this diminished set of weaker allegations can supply the basis for a strong inference of scienter when the more detailed allegations in the prior complaint could not.

Likewise, Plaintiffs have failed to explain why they have backtracked from the confidential witness allegation in their prior complaint that reserve accounting was a "point of contention" between Medicis and EY. AC ¶ 38; *see also id.* ¶ 109. The current complaint now alleges that the "point of contention" was between Medicis and its "internal auditors"—i.e., employees of Medicis, not EY. The fact that Plaintiffs have contradicted themselves undermines the reliability of all of the allegations in the complaint. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1093 (9th Cir. 2002) (deficiencies in scienter claims have a

---

[2] Plaintiffs also argue that EY was aware that exchange accounting was inappropriate because another of its clients, Allergan, established reserves based on sales price. Opp. at 32. Plaintiffs ignore the obvious explanation for the different approaches. As Plaintiffs allege (SAC ¶ 46), Allergan was accounting for anticipated *returns*, not replacement of expired product with fresh, like Medicis.

"spillover effect" on subsequent allegations). And the remaining CW allegations—that EY asked for reports regarding reserve methodology and that CW1 was unable to answer EY's questions—are unchanged and no more indicative of scienter now than when the Court previously rejected them. *See* Order at 23; Mot. at 10-11.

### C. **Plaintiffs Ignore the Prohibition on Using Expert *Opinion* Testimony to Satisfy the PSLRA's Requirement of Particularized *Facts***

Having abandoned the pretense that there was any contemporaneous accounting guidance governing Medicis's product exchanges, Plaintiffs resort to improperly including opinion testimony from a purported expert. Again, though, Plaintiffs simply have no answer for EY's explanation why the opinion testimony cannot satisfy their burden under the PSLRA. *See* Opp. at 6-7. As EY noted, Plaintiffs' expert stops notably short of opining that the accounting question at issue was so obvious that EY and Medicis could only have gotten it wrong if they were intending to perpetrate a fraud. Absent that conclusion, the testimony amounts to nothing more than a claim that GAAP was misapplied—a proposition that is undisputed and that is insufficient to carry Plaintiffs' burden to show scienter. *E.g., DSAM Global Value Fund*, 288 F.3d at 390.

Plaintiffs are also wrong on the law. They contend that EY's authorities barring expert opinion testimony only apply to affidavits attached to pleadings, not to testimony inserted into the body of a complaint. *See* Opp. at 7. But as EY noted, the Fifth Circuit has explicitly and persuasively held that *regardless* of the form in which expert opinions are presented at the pleading stage, the PSLRA prevents courts from considering them. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 285-86 (5th Cir. 2006). In *Blackwell*, the plaintiffs submitted an expert affidavit with their complaint, and contended it should be considered pursuant to Fed. R. Civ. P. 10 (which provides that exhibits attached to the pleading are considered part of it). 440 F.3d at 285. The district court declined to consider the expert opinion. In affirming, the Fifth Circuit emphasized that it did not base its decision on the form in which the expert opinion was presented: "Even if non-opinion portions of an expert's affidavit constitute an instrument pursuant to Rule 10, *opinions cannot substitute for facts under the*

6

*PSLRA.*" *Id.* at 286 (emphasis added). The Fifth Circuit therefore held that the district court properly refused to consider an opinion strikingly similar to the one Plaintiffs proffer here. *See id.* at 290 (noting the proffered opinion was regarding what a "reasonable auditor" would have done under the circumstances).

Contrary to Plaintiffs' suggestion, the Ninth Circuit has not held otherwise, and there is every reason to believe that it would follow the Fifth Circuit's persuasive holding. True, the Ninth Circuit did refer to an expert's *factual* allegations in *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, which shed light on the complex financial impact of the transactions at issue. 380 F.3d 1226, 1233 (9th Cir. 2004). But the *Oracle* court was not asked to opine on pure *opinion* testimony of the type offered here, nor to reconcile the vagaries of opinion testimony with the PSLRA's strict requirement of particularized facts. *See id.*[3] Indeed, even without the PSLRA as a bar, the Ninth Circuit has regularly rejected the use of conclusory expert opinions to establish scienter. *See, e.g., In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1425-27 (9th Cir. 1994) (affirming summary judgment against Section 10(b) claims despite expert's "conclusory" opinion of auditor scienter that was "not based on specific facts that shed light on the mental state of Deloitte's auditors"). So Plaintiffs simply have provided no explanation why their purported expert opinion should change this Court's prior holding.

III. **Plaintiffs Have Not Addressed—And Therefore Concede—EY's Argument That Motives Unique to Medicis Cannot Not Support An Inference Of Scienter On EY's Part**

The opposition argues that purported "channel stuffing" by Medicis somehow indicates scienter on the part of EY. Opp. at 34. But Plaintiffs offer no facts whatsoever, in their brief or in their complaint, suggesting that EY was aware of the purported channel stuffing. As EY demonstrated in its opening brief, "motive" allegations that are unique to *Medicis* provide no basis for inferring scienter as to EY. *See, e.g., In re Van Wagoner Funds, Inc., Sec. Litig.*, 382 F. Supp. 2d 1173, 1185–86 (N.D. Cal. 2004) ("[W]here a transaction derives its

---

[3] Neither was the court in Plaintiffs' other case, *In re Wash. Mut. Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 99727, at *24 (W.D. Wash. Oct. 27, 2009).

suspiciousness from specific details associated with the audited company's business, the plaintiff must plead facts suggesting the accountant's awareness of those details or 'red flags.'"); *Reiger*, 117 F. Supp. 2d at 1009 ("[p]laintiffs leave a critical gap unbridged by failing to allege any facts suggesting Price Waterhouse knew" of supposed red flags). Plaintiffs' opposition ignores EY's argument on this point—a clear concession that allegations of channel stuffing cannot support scienter as to EY.

The same is true for Plaintiffs' argument regarding working capital. Ignoring EY's arguments on this point, Plaintiffs explicitly claim that their "working capital" allegations provide a purported motive for *Medicis*. Opp. at 24 ("[T]he SAC provides another motive for *the Company* to violate the express dictates of SFAS 48—the material inflation of working capital . . . ." (emphasis added)). But Plaintiffs plead no facts suggesting that the inflation of working capital provided a motive for *EY* to commit fraud. So these allegations are simply irrelevant as to EY.[4]

### IV. The Most Cogent Inference Is That EY's Audit Opinions Were Innocently Misstated

When viewed as a whole, the most cogent inference to be drawn from the amended complaint is that EY's audit opinions were innocently misstated. At most, the amended complaint describes a judgment by Medicis that attempted to account for the economic reality of transactions not expressly governed by the provisions of FAS 48. Plaintiffs have proffered no facts remotely suggesting that EY had a motive to condone a client's purported fraud. Because the inference of an innocent accounting error is far more compelling than fraud, Plaintiffs once again fail to satisfy the PSLRA. *Tellabs*, 551 U.S. at 314.

---

[4] Plaintiffs also claim that Medicis was affirmatively misleading investors by failing to disclose its methodology for computing product exchange reserves. *See* Opp. at 32. The implication here is that Medicis and EY must have known that GAAP was being misapplied if they felt they had something to hide. This support for this implication collapses, however, when Medicis's disclosures are compared to those of its competitors. As EY explained in its opening brief, Medicis and its competitors combined a discussion of a variety of sales practices—such as returns, rebates, sales incentives, trade promotions, coupons and discounts—into a single disclosure. What Medicis did disclose—that it reduced sales revenue to account for estimated future exchanges—was accurate, and entirely consistent with the level of detail common in industry practice. *See* Mot. at 6-7.

## CONCLUSION

After two attempts, it is clear that Plaintiffs cannot state a Section 10(b) claim against EY.  There is no reason Plaintiffs should be afforded a third opportunity—especially in light of the fact that the amended complaint fails to cure the deficiencies identified in the Court's detailed order granting the prior motion to dismiss.  Accordingly, the amended complaint should be dismissed with prejudice.

DATED: April 14, 2010

QUARLES & BRADY LLP

By: /s/ Nicole France Stanton
Nicole France Stanton

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Robert Hubbell
Robert Hubbell

Attorneys for Defendant
Ernst & Young LLP

100840396_4 (2).DOC

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the attached Electronic Mail Notice List.

/s/Kelly Thwaites

### Electronic Mail Notice List

Joseph G. Adams
jgadams@swlaw.com, amurray@swlaw.com, docket@swlaw.com

Jeremy James Christian
jjc@tblaw.com, sam@tblaw.com, sab@tblaw.com

John D. Cooke
jcooke@goodwinprocter.com, rnovak@goodwinprocter.com

Patrick V. Dahlstrom
pdahlstrom@pomlaw.com

Andrew S. Friedman
afriedman@bffb.com, rcreech@bffb.com, ngerminaro@bffb.com

Mark I. Gross
mgross@pomlaw.com

Richard Glenn Himelrick
rgh@tblaw.com, sab@tblaw.com

Joel Philip Hoxie
jhoxie@swlaw.com, jkfisher@swlaw.com, docket@swlaw.com

Jeremy A. Lieberman
jalieberman@pomlaw.com

Susan Joan Martin
smartin@martinbonnett.com, tmahabir@martinbonnett.com, mblawfirm@aol.com

Jennifer Lynn Kroll
jkroll@martinbonnett.com

Brian E. Pastuszenski
bpastuszenski@goodwinprocter.com

Blake E. Williams
bwilliams@goodwinprocter.com

Lloyd Winawer
lwinawer@goodwinprocter.com, sasmith@goodwinprocter.com

1

ERNST & YOUNG LLP'S MOTION TO DISMISS         Master File No. CV-08-01821-PHX-GMS
PLAINTIFFS' SECOND AMENDED COMPLAINT