Joel P. Hoxie (State Bar No. 005448)
*jphoxie@swlaw.com*
Joseph G. Adams (State Bar No. 018210)
*jgadams@swlaw.com*
**SNELL & WILMER LLP**
One Arizona Center
Phoenix, Arizona 85004-2202
Telephone: 602-382-6000
Facsimile: 602-382-6070

Lloyd Winawer (*Pro Hac Vice*)
*lwinawer@goodwinprocter.com*
**GOODWIN PROCTER LLP**
135 Commonwealth Drive
Menlo Park, California 94025-1105
Telephone: 650-752-3100
Facsimile: 650-853-1038

Brian E. Pastuszenski (*Pro Hac Vice*)
*bpastuszenski@goodwinprocter.com*
**GOODWIN PROCTER LLP**
53 State Street
Boston, Massachusetts 02109
Telephone: 617-570-1000
Facsimile: 617-523-1231

Attorneys for Defendants
*Medicis Pharmaceutical Corporation,
Jonah Shacknai, Richard D. Peterson, and
Mark A. Prygocki, Sr.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: MEDICIS PHARMACEUTICAL CORP. SECURITIES LITIGATION | Case No. 2:08-CV-01821-PHX-GMS<br><br>**CLASS ACTION**<br><br>**THE MEDICIS DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED FEDERAL SECURITIES CLASS ACTION COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED** |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ..................................................................................................................... 2

    I.    PLAINTIFFS HAVE NOT PLEADED PARTICULARIZED FACTS SUPPORTING A STRONG INFERENCE OF SCIENTER. ........................ 2

        A.    Medicis's Accounting Error Was Not "Obvious" .............................. 2

        B.    No Facts Have Been Alleged Showing That Medicis Actually Knew It Was Misinterpreting Or Misapplying GAAP ...................... 5

        C.    The "Channel Stuffing" Allegations Do Not Support An Inference That Medicis Deliberately Misapplied SFAS 48 ............... 7

        D.    The SAC's "Confidential Witness" Allegations Do Not Support A Strong Inference of Scienter ............................................. 8

        E.    The Magnitude And Impact Of Medicis's Restatement Are Inconsistent With And Undermine Any Inference Of Scienter ......... 9

    II.    A "HOLISTIC" READING OF THE SAC ALSO REQUIRES DISMISSAL ............................................................................................ 10

CONCLUSION ................................................................................................................ 11

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Brody v. Transitional Hosps. Corp.*
    280 F.3d 997 (9th Cir. 2002) ................................................................................................ 7

*Fin. Acquisition Partners LP v. Blackwell*
    440 F.3d 278 (5th Cir. 2006) ................................................................................................ 4

*Freedman v. La.-Pac. Corp.*
    922 F. Supp. 377 (D. Or. 1996) ............................................................................................ 7

*Helwig v. Vencor, Inc.*
    251 F.3d 540 (6th Cir. 2001) ................................................................................................ 7

*In re Apollo Group Inc. Sec. Litig.*
    395 F. Supp. 2d 906 (D. Ariz. 2005) .................................................................................... 7

*In re Countrywide Fin. Corp. Sec. Litig.*
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ................................................................................ 6

*In re Daou Sys., Inc.*
    411 F.3d 1006 (9th Cir. 2005) ........................................................................................ 5, 6

*In re Hypercom Corp. Sec. Litig.*
    No. CV-05-0455-PHX-NVW, 2006 WL 1836181 (D. Ariz. July 5, 2006) ................... 11

*In re Trex Co., Inc. Sec. Litig.*
    212 F. Supp. 2d 596 (W.D. Va. 2002) .................................................................................. 9

*In re Wash. Mut., Inc. Sec. Litig.*
    --- F. Supp. 2d ---, 2009 U.S. Dist. LEXIS 99727 (W.D. Wash. Oct. 27, 2009) ............ 5

*Institutional Investors Group v. Avaya, Inc.*
    564 F.3d 242 (3d Cir. 2009) ................................................................................................. 6

*Lipton v. Pathogenesis Corp.*
    284 F.3d 1027 (9th Cir. 2002) ............................................................................................ 11

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*
    380 F.3d 1226 (9th Cir. 2004) .............................................................................................. 5

*Rubke v. Capitol Bancorp., Ltd.*
    551 F.3d 1156 (9th Cir. 2009) ............................................................................................ 10

# TABLE OF AUTHORITIES (CONT.)

**Page(s)**

**FEDERAL CASES (CONT.)**

*South Ferry #2 v. Killinger*
   --- F. Supp. 2d ---, 2009 U.S. Dist. LEXIS 91174 (W.D. Wa. Oct. 1, 2009) ................ 6

*Tellabs, Inc. v. Makor Issues & Right, Ltd.*
   551 U.S. 308 (2007) .............................................................................................. 4, 10

**FEDERAL STATUTES**

15 U.S.C. § 78*j* ............................................................................................................... 11

15 U.S.C. § 78*t* ............................................................................................................... 11

**PRELIMINARY STATEMENT**

This Court's Order dismissing Plaintiffs' original complaint identified clearly the defects in that pleading that led to its dismissal. The Second Amended Complaint ("SAC") has not remedied any of those defects. And, Plaintiffs' Opposition to Defendants' motions to dismiss the SAC confirms that. The Opposition does little more than regurgitate the allegations in the SAC – virtually all of which are identical to those in the prior complaint and virtually all of which the Court already has held insufficient – without explaining how the SAC cures the defects that led to its predecessor's dismissal.

Contrary to a principal focus of the Opposition, the central issue is not whether Defendants knew how Medicis reserved for the exchange of short-dated or expired product. Rather, the issue is whether the SAC alleges specific facts supporting a strong inference that Defendants ***knew that Medicis was misapplying*** SFAS 48[1] in reserving for such exchanges or that its interpretation of SFAS 48 was ***such an extreme departure*** from reasonable accounting practice that they ***must have known***. The Opposition, however, does not point to any facts alleged in the SAC that would support any such inferences.

Instead, the Opposition attempts to draw attention away from the lack of such factual allegations by discussing the inclusion in the SAC of the factually-unsupported opinion of an accounting professor retained by Plaintiffs that Medicis's interpretation of SFAS 48 was "clearly inappropriate." The Opposition also argues for the first time, based on the same expert's opinion, that Medicis's public disclosure that "exchanges for expired product are established as a reduction of product sales revenues" was inaccurate. But, bald opinions cannot substitute for the particularized facts required by the Private Securities Litigation Reform Act. And, Medicis's public disclosure of its reserve policy was precisely correct. In that regard, Plaintiffs do not dispute that Medicis ***did*** reduce product sales revenues to account for anticipated exchanges of short-dated or expired product.

---

[1] Abbreviations and defined terms have the same meaning ascribed in the Medicis Defendants' February 19, 2010 Memorandum in Support of their Motion to Dismiss Plaintiffs' Second Amended Federal Securities Class Action Complaint ("MD Mot.").

1  Medicis had no legal duty to disclose the *amount* by which revenues were reduced.

2  During the relevant period, Medicis's auditors certified that Medicis's financial
3  statements complied with GAAP, and confirmed that its interpretation of SFAS 48 was
4  appropriate. Like its predecessor, the SAC does not allege a single fact that would support
5  the contrary inference that Defendants knowingly misapplied GAAP. Because Plaintiffs
6  have not cured the defects this Court identified in the prior complaint despite having an
7  ample opportunity to do so, this action should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFFS HAVE NOT PLEADED PARTICULARIZED FACTS SUPPORTING A STRONG INFERENCE OF SCIENTER.

11  Plaintiffs argue in their Opposition that Medicis's motion to dismiss "failed to
12 proffer any evidence" that it satisfied the requirements for applying Footnote 3 in SFAS 48
13 ("Footnote 3"). Opp. at 30. That argument, however, has the analysis entirely backwards.
14 The issue is not whether Medicis complied with GAAP – by restating, Medicis
15 acknowledged that its and EY's interpretation of SFAS 48 was mistaken. Rather, the issue
16 is whether Plaintiffs have alleged particularized facts giving rise to a strong inference that
17 Medicis and EY *deliberately* misapplied SFAS 48, knowing that Footnote 3 did not apply
18 to exchange of short-dated or expired product. Order at 8. And, it is Plaintiffs' burden to
19 allege specific facts supporting such an inference, not Defendants' burden to "proffer
20 evidence" to the contrary. As with the prior complaint, whether the allegations in the SAC
21 are viewed individually or holistically, the most plausible inference to be drawn from
22 Plaintiffs' allegations is that Medicis and EY in good faith erroneously interpreted a
23 complex GAAP provision for which no specific pharmaceutical industry guidance existed.

### A. Medicis's Accounting Error Was Not "Obvious."

25 As they did in the complaint this Court dismissed, Plaintiffs continue to argue in the
26 SAC and the Opposition that the requirements for applying SFAS 48 were so "obvious"
27 that Medicis and EY had to know that they were misapplying GAAP. Opp. at 29-30, 33.
28 Like the predecessor complaint, the SAC does not identify any definitive GAAP provision

2

or guidance concerning pharmaceutical transactions that would have alerted Medicis and its outside auditors at EY that their interpretation of SFAS 48 was incorrect. The Opposition does not contend otherwise. Although the Court rejected this very argument in its Order, Plaintiffs again argue that treating short-dated or expired pharmaceutical products as the same "quality, kind, and price" as fresh product within the meaning of Footnote 3 was clearly erroneous. *Id.* at 5-6, 30. The Opposition, however, merely rehashes the same allegations that the Court already found inadequate to support a strong inference of scienter, including Medicis's alleged inability to resell expired products and the alleged use of "zero dollar" invoices to keep track of product exchanges. As the Court has held, however, knowledge that "expired drugs cannot be sold on the market . . . does not indicate that Defendants knew that their accounting methodology based on replacement cost was incorrect." Order at 23.[2]

In the Opposition, Plaintiffs also recycle the argument they made in connection with the prior complaint that the Medicis distributors who were granted exchange rights were somehow not Medicis's "ultimate customers" within the meaning of Footnote 3. Opp. at 4-5, 21-22. Plaintiffs relied on this same allegation in opposition to the prior motion to dismiss, arguing that under Statement of Position ("SOP") 97-2 Medicis's wholesalers were not "ultimate customers" under Footnote 3. The Court found that SOP 97-2, which applies to computer software transactions, did not apply to pharmaceutical sales. Order at 11. Although Plaintiffs have dropped any reference to SOP 97-2, they persist in asserting that Medicis could not have believed that its wholesale customers fell within the "ultimate customer" language of Footnote 3. As with their argument that short-dated or

---

[2] This Court and numerous others have held that a financial restatement due to an accounting error, without more, is insufficient to create a strong inference of scienter. Order at 9. Ignoring this settled law, Plaintiffs argue that "Medicis and E&Y would have this Court hold that any violation of GAAP can never support *scienter* because GAAP requires an exercise of judgment." Opp. at 1 (emphasis in original). Not so. Rather, what Medicis and EY are saying is that the SAC in this case has failed to allege any facts that support a strong inference that Medicis's restatement resulted from a ***deliberate*** misapplication of GAAP.

3

expired products do not satisfy the "same quality, kind, and price" language in Footnote 3, the SAC still does not identify any definitive GAAP provision or guidance that defines who is the "ultimate customer" for purposes of applying Footnote 3 to pharmaceutical sales transactions.  And, the Opposition does not contend otherwise.  Moreover, Plaintiffs do not dispute that Medicis's customers in fact were wholesalers and resellers.  These wholesalers and resellers were the customers who ordered from and paid Medicis for its products, these are the only customers who were granted the right to exchange short-dated or expired product, and these are the only customers who exchanged Medicis product. Neither the original complaint nor the SAC contends that retail buyers who bought pharmaceutical products traceable to these wholesalers and resellers had any business dealings with Medicis, ever paid Medicis anything, or ever returned any products to Medicis for exchange with fresher versions of the same product.  And, neither the SAC nor its predecessor alleges that Medicis's wholesaler/reseller customers' payment obligations were contingent on product sell through to retail end-users.  In short, like its predecessor, the SAC does not identify a single fact suggesting that Medicis's wholesale/reseller customers obviously could not be considered "ultimate customers" under Footnote 3.

Instead, Plaintiffs try to make up for the lack of any such *facts* by inserting into the SAC the supposed *opinion* of an accounting professor that Medicis's interpretation of SFAS 48 was unreasonable.  Opp. at 1, 6, 20.  "Opinions," however, are not facts, and expert "opinions cannot substitute for facts under the [Reform Act]." *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006).  Just like the prior complaint that the Court found deficient, this accounting professor's opinion does not cite a single GAAP provision or any definitive GAAP guidance that would support the inference that Medicis and EY did not have a "sound basis" to apply Footnote 3 because "[n]either the wholesale customers of Medicis are 'ultimate customers' nor is the quality of the products subject to exchanges the same 'quality kind or price.'"  SAC ¶ 44.  Accordingly, these alleged opinions cannot satisfy Plaintiffs' obligation under the Reform Act and the Supreme Court's recent *Tellabs* decision to allege specific *facts* that support a strong

4

inference that Medicis and EY knew they were misapplying GAAP and did it anyway. *See* MD Mot. at 3-4.[3]

### B. No Facts Have Been Alleged Showing That Medicis Actually Knew It Was Misinterpreting Or Misapplying GAAP.

Plaintiffs again argue (Opp. at 26-30) that the Court should draw a strong inference of scienter from the individual defendants' involvement with Medicis's so-called "core operations" even though the Court rejected that argument in its Order. Nothing in the Opposition warrants revisiting the Court's rejection of that argument. Order at 12-15.

Plaintiffs argue that the individual defendants "knew of the core operations of Medicis similar to the circumstances in *In re Daou Sys., Inc.*, 411 F.3d 1006, 1022-23 (9th Cir. 2005)." Opp. at 27. As with their prior complaint, however, Plaintiffs nowhere explain how alleged knowledge of Medicis's business operations could substitute for a factually particularized allegation that Medicis was aware that it was misapplying a

---

[3] The two cases that Plaintiffs cite (Opp. at 7, 20) confirm that Plaintiffs may not cure the deficiencies this Court identified in the prior complaint by resorting to a factually unsupported expert's opinion. To the contrary, the complaints in both cases contained factual allegations sufficiently particularized to support an inference of scienter, and the opinions incorporated into those complaints merely supplemented, and did not take the place of, those detailed allegations. In *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1233 (9th Cir. 2004), the complaint contained detailed allegations about the billing and payment histories of the defendant's customers about which, in turn, the plaintiffs' expert had opined. Unlike the opinion here, the opinion in that case was based on a detailed factual foundation, including the expert's interview of the defendant's employees and an internal report. Indeed, the court noted that "the documents themselves appear to establish improper revenue adjustment" independent of the opinion. Likewise, in *In re Wash. Mut., Inc. Sec. Litig.*, --- F. Supp. 2d ---, 2009 U.S. Dist. LEXIS 99727, at *23-24 (W.D. Wash. Oct. 27, 2009), the district court held that the plaintiff expert's analysis of the defendant's alleged loan appraisal inflation practices merely "reinforced" the "substantial detail" regarding such practices alleged in the complaint. Similarly, the allegations regarding defendant's deteriorating loan underwriting standards were supported by statements attributed in the complaint to "confidential witnesses" "from nearly every level of the Company throughout the country. . . ." *Id.* at *27. Here, in contrast, the "opinion" of Plaintiffs' accounting professor that Medicis's and EY's interpretation of SFAS 48 was "clearly inappropriate" is not supported by reference to any specific GAAP provision or definitive guidance that would have made it apparent to Defendants that their interpretation of SFAS 48 was unreasonable and obviously wrong.

5

1  complex GAAP provision.  Indeed, for just this reason this Court held in regard to the prior
2  complaint that *Daou* was inapposite, explaining that Plaintiffs here "do not present
3  particular facts suggesting that the Defendants knew that the Company was in violation of
4  SFAS 48 when it issued its original financial statements."  Order at 16.[4]  Nothing has
5  changed.  As before, Plaintiffs argue that Medicis allegedly said it monitored inventory
6  levels and had not booked "revenue in advance of future quarters" (Opp. at 16, 28), but
7  they nowhere point to even a single allegation in the SAC that could support the required
8  strong inference that Medicis knew it was violating GAAP.  As this Court aptly said in
9  dismissing the largely identical prior complaint, "allegations that Medicis's management
10 monitored the number of exchanged pharmaceutical products or . . . believed that they
11 were not booking revenues in advance of future quarters does not support the inference
12 that management must have been in a position to know that the Company's accounting
13 methodology was in violation of GAAP."  Order at 16-17.
14    For the first time, Plaintiffs also argue that Medicis misstated in its SEC filings that
15 "'exchanges for expired product are established as a reduction of product sales revenues at
16 the time such revenues are recognized.'"  Opp. at 28.  These statements, however, were
17 precisely correct – Plaintiffs do not dispute that Medicis did reduce its product revenues in
18 reserving for the exchange of expired and short-dated product.  Because the statements

---

[4] The other cases Plaintiffs cite (Opp. at 28-29) are also inapposite.  Each of those cases involved detailed factual allegations supporting a strong inference of the defendants' actual knowledge of the specific misstatement at issue.  No such facts are alleged here.  *See, e.g., South Ferry #2 v. Killinger,* --- F. Supp. 2d ---, 2009 U.S. Dist. LEXIS 91174, at *34 (W.D. Wa. Oct. 1, 2009) (strong inference of scienter could be drawn where complaint's factual allegations (addressed in earlier opinion) contradicted CEO's public assurances that WaMu was managing its credit risk and was technologically capable of managing credit-risk-related information); *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 270 (3d Cir. 2009) (strong inference of scienter could be drawn where CFO's denials of product discounting were contradicted by detailed factual allegations attributed to several confidential witness accounts and by an alleged admission by the CFO that "widespread discounting involving many different product lines and accounts" had occurred); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1194 & n.77 (C.D. Cal. 2008) (finding that multiple "confidential witness" allegations and internal documents called defendants' public statements into question).

6

were accurate and would not have led investors to form any conclusions as to the amount of such sales revenue reductions, Medicis had no legal duty to disclose the extent to which sales revenues were reduced in respect of such exchanges (*i.e.*, by an amount equal to cost of sales as opposed to gross customer sales price). As the Ninth Circuit has clearly held, "[t]o be actionable under the securities laws, an omission . . . must ***affirmatively*** create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (emphasis added).[5] In any event, Plaintiffs never explain in the Opposition or the SAC how Medicis's public disclosure of its reserve practices evidences that Medicis ***knew*** it was misapplying SFAS 48. As the Court held with respect to other Medicis statements attacked by Plaintiffs, these "allegations merely indicate that management was aware of SFAS 48 and aware of their reserve methodology—not that management knew its interpretation of SFAS 48 was wrong." Order at 17.[6]

    **C.**    **The "Channel Stuffing" Allegations Do Not Support An Inference That Medicis Deliberately Misapplied SFAS 48.**

Plaintiffs do not even try in the Opposition to explain how the "channel stuffing" allegations this Court already has rejected now evidence a deliberate misapplication of

---

[5] In contrast, the cases Plaintiffs cite (Opp. at 23) all involved omission of negative information that materially contradicted the defendants' misleading public statements. For example, in *In re Apollo Group Inc. Sec. Litig.*, 395 F. Supp. 2d 906 (D. Ariz. 2005), the court held that defendants "made several positive statements about the DOE [Department of Education] program review that were contrary to the findings in the DOE Report[,]" which actually had found violations of DOE regulations. *Id.* at 909, 921. *Accord Helwig v. Vencor, Inc.*, 251 F.3d 540, 561 (6th Cir. 2001) (health care provider's statements that it could not predict the effect of the Balanced Budget Act's impact on its business were misleading for failure to disclose statements made internally acknowledging the adverse impact); *Freedman v. La.-Pac. Corp.*, 922 F. Supp. 377, 389 (D. Or. 1996) (statements about the market success of defendant's products were misleading for failure to disclose known defects, thus creating a false impression of superior products).

[6] The opinion of an accounting professor that Medicis supposedly "tailored its disclosures to lead investors to falsely believe that it was reserving for returns by reducing gross sales in accordance with SFAS 48" (Opp. at 22; *see also* SAC ¶ 52;) is again not a fact, but factually unsupported – and wholly inadequate – speculation. *See supra* at 1, 4, 5.

SFAS 48. Likewise, they make no attempt to explain how their allegations here come remotely close to the kinds of allegations that courts in the cases cited in Medicis's Opening Brief found sufficient to sustain channel stuffing claims. *See* MD Mot. at 6-7. In those other cases, the defendant companies reversed previously recorded revenues when excess product was shipped and was later returned pursuant to pre-existing arrangements. No such facts, however, have been alleged here – no revenues are alleged ever to have been reversed. Plaintiffs similarly ignore the other deficiencies that Medicis highlighted in their channel stuffing allegations. Rather, Plaintiffs merely repeat the SAC's allegations, apparently hoping that this repetition will somehow disguise the deficiencies that previously led the Court to dismiss these same allegations. *See* Opp. at 12-13. In any event, as with the prior complaint, not only have Plaintiffs failed to allege particularized facts sufficient to establish that "channel stuffing" actually occurred in the first instance, but they still have not explained how channel stuffing, had it occurred, would show "that Defendants must have known that their interpretation of SFAS 48 was wrong." Order at 17.

### D. The SAC's "Confidential Witness" Allegations Do Not Support A Strong Inference of Scienter.

In the Opening Brief, the Medicis Defendants showed that virtually all of the SAC's "confidential witness" allegations were virtually identical to those in the previously dismissed complaint. MD Mot. at 8-13. The Opposition does not contend otherwise. *See* Opp. at 25-26 (repeating allegations about tracking script sales, channel stuffing, "swaps" and "zero dollar invoices" that the Court rejected as insufficient in the prior complaint). Likewise, as Medicis noted in its Opening Brief, the few CW allegations that Plaintiffs have added to the SAC, have been rejected by courts as too generic to support a strong inference of scienter. *See*, *e.g.*, MD. Mot. at 10 (allegations that "Medicis's 'executive management was under a lot of pressure to meet expectations on the Street'" and "[t]he Company emphasized the importance of having consecutive quarters without reporting a fiscal loss"). In the Opposition, Plaintiffs cite no contrary authority. As the district court

observed in *In re Trex Co., Inc. Sec. Litig.*, 212 F. Supp. 2d 596, 607 (W.D. Va. 2002), "[e]very corporate officer wants to meet analysts' expectations, and every corporate officer wants a bigger bonus. Allegations based solely on these incentives lead to no more than a 'strained and tenuous inference of motive,' and therefore must fail." Furthermore, the Opposition nowhere addresses Medicis's argument (MD Mot. at 8-13) that the SAC does not provide the requisite details that would enable this Court to infer that the CWs had personal knowledge of the facts attributed to them. And, even if the SAC had provided such details, the allegations attributed to these so-called "CWs" have no bearing on whether Medicis knowingly misapplied SFAS 48 – the central issue in this case.

In short, none of the SAC's CW allegations supports a strong inference that Defendants "were aware of a correct interpretation of SFAS 48 but chose to intentionally or recklessly ignore it." Order at 18.

### E. The Magnitude And Impact Of Medicis's Restatement Are Inconsistent With And Undermine Any Inference Of Scienter.

Plaintiffs contend that the SAC now adequately alleges "a scheme to push forward revenues in certain quarters in order to maintain an image of consistent and steady growth." Opp. at 23. As with the previous complaint, however, Plaintiffs "allege no facts . . . suggesting how Defendants would benefit from the manipulation of the period in which revenue was recognized," especially given that Medicis actually ***understated*** revenues during three of the six restated fiscal periods and cumulatively ***understated*** revenues over the course of this entire period by $1.1 million. Order at 3.

Ignoring these facts, Plaintiffs cherry pick among the restated periods, arguing that Medicis's revenues in 2003 were $210.8 million (as restated) rather than the $247 million originally reported. Opp. at 24. That assertion, however, cannot support any inference (let along the required strong inference) of a scheme to "push forward revenues" given that Medicis's accounting error caused the Company to ***understate*** revenues by $11.5 million and $44.0 million in fiscal years 2004 and 2006, respectively. Order at 3. Plaintiffs also disingenuously argue that the misapplication of SFAS 48 enabled Medicis to originally

9

report revenues for the quarter ended September 30, 2007 that exceeded the prior quarter's results. Again, Plaintiffs ignore that Medicis originally reported *lower* revenues for each of the five quarters from March 31, 2006 through March 31, 2007 – revenues that ultimately were revised *upward* as a result of the restatement. Ex. B at 54-57. These undisputed financial results – which the Court must consider under *Tellabs, Inc. v. Makor Issues & Right, Ltd.*, 551 U.S. 308 (2007) – undermine the inference Plaintiffs would have this Court draw.

As Medicis explained in its Opening Brief, the SAC's allegations regarding "working capital" also get Plaintiffs nowhere. MD Mot. at 5-6. Plaintiffs apparently do not disagree because the Opposition does not even attempt to respond to Medicis's arguments that: (1) Medicis had several hundred million dollars of working capital at all times throughout the relevant period; (2) that figure was overstated by only about 8 to 11.5 percent during the putative Class Period; and (3) "Medicis's restatement demonstrates that the accounting error had no impact on Medicis's cash flows, business operations, or net revenues from 2003-2008." Order at 26-27. Thus, rather than supporting a strong inference that Medicis deliberately misapplied GAAP, the magnitude and impact of Medicis's restatement is far more consistent with an innocent mistake.

## II. A "HOLISTIC" READING OF THE SAC ALSO REQUIRES DISMISSAL.

As they unsuccessfully argued in regard to the prior complaint, Plaintiffs once again contend that, when read "holistically," the SAC supports an inference of scienter. Opp. at 31-32. The SAC, however, is little changed from the prior complaint which the Court found did not "as a whole, 'contain[] an inference of scienter that is greater than the sum of its parts.'" Order at 25 (quoting *Rubke v. Capitol Bancorp., Ltd.,* 551 F.3d 1156, 1165 (9th Cir. 2009)). The inclusion in the SAC of the factually unsupported "opinions" of an accounting professor and allegations concerning Medicis's disclosure of its accounting policy are both individually insufficient (*supra* at 1, 4-7) and do not materially alter the totality of Plaintiffs' fraud allegations. Thus, it remains the case that, "considering Plaintiffs' allegations as a whole, . . . any inference of scienter by the Medicis Defendants

is outweighed by the opposing inference that the Medicis Defendants made an innocent accounting mistake." Order at 28.[7]

## CONCLUSION

In its Order dismissing the SAC's predecessor, this Court gave Plaintiffs clear guidance as to the defects in the original complaint that they needed to cure in the next complaint to avoid dismissal of this case. Plaintiffs now have had an ample opportunity to allege particularized facts giving rise to a strong inference that Medicis and EY deliberately violated GAAP. They still have not done so. Because Plaintiffs have not alleged, and cannot in good faith allege, any facts suggesting that Medicis and its auditors knowingly misapplied GAAP, granting leave to amend yet again would be futile and this Court should dismiss the SAC with prejudice. *See*, *e.g.*, *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002) (affirming dismissal of complaint with prejudice where "any amendment would be futile" and thus "there was no need to prolong the litigation by permitting further amendment"); *accord In re Hypercom Corp. Sec. Litig.*, No. CV-05-0455-PHX-NVW, 2006 WL 1836181, at *12 (D. Ariz. July 5, 2006) (leave to amend would be futile where amended complaint "made little effort to address" deficiencies identified in earlier dismissal order).

Dated:   April 14, 2010

Respectfully submitted,

By: /s/  Lloyd Winawer
Brian E. Pastuszenski
*bpastuszenski@goodwinprocter.com*
Lloyd Winawer
*lwinawer@goodwinprocter.com*
**GOODWIN PROCTER LLP**

Joel P. Hoxie
*jphoxie@swlaw.com*
Joseph G. Adams
*jgadams@swlaw.com*
**SNELL & WILMER LLP**

*Attorneys for Defendants
Medicis Pharmaceutical Corporation,
Jonah Shacknai, Richard D. Peterson, and
Mark A. Prygocki, Sr.*

---

[7] Because Plaintiffs have not alleged a predicate Section 10(b) violation, their Section 20(a) claim must be dismissed as well. Order at 30.

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

- **Joseph G Adams**
  jgadams@swlaw.com,mgarsha@swlaw.com,docket@swlaw.com

- **Jeremy James Christian**
  jjc@tblaw.com,sab@tblaw.com,jeg@tblaw.com

- **John D Cooke**
  JCooke@goodwinprocter.com

- **Patrick V Dahlstrom**
  pdahlstrom@pomlaw.com

- **Andrew S Friedman**
  afriedman@bffb.com,rcreech@bffb.com,ngerminaro@bffb.com

- **Richard Glenn Himelrick**
  rgh@tblaw.com,sab@tblaw.com

- **Joel Philip Hoxie**
  jhoxie@swlaw.com,jkfisher@swlaw.com,docket@swlaw.com

- **Robert B Hubbell**
  rhubbell@gibsondunn.com

- **Jennifer Lynn Kroll**
  jkroll@martinbonnett.com,jkroll1@cox.net

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com,jalieberman@pomlaw.com

- **Susan Joan Martin**
  smartin@martinbonnett.com,tmahabir@martinbonnett.com,mblawfirm@aol.com

- **Alexander K Mircheff**
  amircheff@gibsondunn.com

- **Brian E Pastuszenski**
  bpastuszenski@goodwinprocter.com

- **Nicole France Stanton**
  nicole.stanton@quarles.com,docketaz@quarles.com,kthwaite@quarles.com

- **Lloyd Winawer**
  lwinawer@goodwinprocter.com,sasmith@goodwinprocter.com

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 14, 2010.

/s/ Lloyd Winawer
Lloyd Winawer
Brian E. Pastuszenski
**GOODWIN PROCTER LLP**

Joel P. Hoxie
Joseph G. Adams
**SNELL & WILMER L.L.P.**