**SUSAN MARTIN (AZ# 014226)**
**JENNIFER KROLL (AZ# 019859)**
**MARTIN & BONNETT PLLC**
1850 North Central Avenue, Suite 2010
Phoenix, Arizona  85004
Telephone:    (602) 240-6900
Facsimile:     (602) 240-2235
smartin@martinbonnett.com
jkroll@martinbonnett.com

**PATRICK V. DAHLSTROM**
(*pro hac vice*)
**POMERANTZ HAUDEK**
**GROSSMAN & GROSS LLP**
Ten South La Salle Street
Suite 3505
Chicago, Illinois  60603
Telephone:    (312) 377-1181
Facsimile:     (312) 377-1184
pdahlstrom@pomlaw.com

**JEREMY A. LIEBERMAN**
(*pro hac vice*)
**R. JAMES HODGSON**
(*pro hac vice*)
**POMERANTZ HAUDEK**
**GROSSMAN & GROSS LLP**
100 Park Avenue, 26th Floor
New York, New York  10017
Telephone:    (212) 661-1100
Facsimile:     (212) 661-8665
jalieberman@pomlaw.com
rjhodgson@pomlaw.com

*Attorneys for Lead Plaintiff Steve Rand and*
*Plaintiff Darlene Oliver*

## UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

|  |  |
|---|---|
| IN RE MEDICIS PHARMACEUTICAL CORPORATION SECURITIES LITIGATION | Master File No. CV-08-01821-PHX-GMS<br><br>**MOTION FOR AND MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS** |

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Steve Rand, and Plaintiff Darlene Oliver (collectively, "Class Plaintiffs"), by and through their undersigned counsel, hereby move this Court to enter the accompanying proposed order:  (i) preliminarily approving the parties' Stipulation of Settlement ("Settlement Stipulation"), which dismisses the claims against Defendants[1] in this lawsuit (the "Action") in exchange for a settlement fund of $18 million; (ii) certifying a settlement class (the "Class"); and (iii) setting a date for a Settlement Hearing and deadlines for the mailing of the Notice, the filing of Class member objections, the filing of Class member opt-out notices, and the filing of Lead Counsel's application for attorneys' fees and expenses.[2]

## MEMORANDUM OF POINTS AND AUTHORITIES

The Settlement Stipulation provides substantial benefits to the Class.  The Settlement Stipulation provides for a total of $18 million to be paid to the Class.  This is an excellent result for Class members and more than satisfies the requirements for preliminary approval of a class action settlement agreement.

### I.      TERMS OF THE SETTLEMENT

The Settlement Stipulation provides for $18 million to be distributed to the Class as follows.  Defendant Medicis Pharmaceutical Corporation ("Medicis" or the "Company") shall direct certain of its insurers to pay $11 million into the Settlement

---

[1]      Defendants are Medicis Pharmaceutical Corporation, Jonah Shacknai, Richard D. Peterson, Mark A. Prygocki, and Ernst & Young LLP.

[2]      All capitalized terms used herein have the meanings set forth and defined in the Settlement Stipulation.

1

Fund Escrow Account, and $7 million will be paid by Defendant Ernst & Young LLP ("EY").  Lead Counsel estimates that, taking into account the loss causation defenses available to Defendants, this number represents 20% – 60% of the recoverable damages suffered by the Class — well above the average settlement for similar securities class actions.  *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing studies indicating that the average securities fraud class action settlement since 1995 has resulted in a recovery of 5.5% – 6.2% of estimated losses); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) (approving settlement that was 10% of estimated maximum recovery); *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987) (*citing City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)) ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

In addition, the Plan of Allocation, which is set out in the proposed Notice, fully comports with the criteria set forth in case law governing the approval of such allocations.  It has a "reasonable" and "rational basis," makes intra-Class allocations based upon the "relative strengths and weaknesses of class members' individual claims and the timing of purchases and sales of the securities at issue," and was formulated by Class Plaintiffs and Lead Counsel in consultation with damages experts.  *In re Charter Communs., Inc.*, MDL No. 1506, 2005 U.S. Dist. LEXIS 14772, at *33-*34 (E.D. Mo. June 30, 2005).  In addition, nothing about the Settlement or Plan of Allocation gives preferential treatment to Class Plaintiffs.

2

## II.     CASE HISTORY AND SETTLEMENT NEGOTIATIONS

This Action arises as a result of the Company's announcement on September 24, 2008 that it would be required to restate its audited financial statements from 2003 to 2007, and its interim financial statements for the first two quarters of fiscal 2008, due to a violation of Generally Accepted Accounting Principles ("GAAP").  Specifically, Medicis announced that the Company's prior financial statements required restatement due to its error in interpreting and applying Statement of Financial Accounting Standards No. 48, *Revenue Recognition When a Right of Return Exists* ("FAS 48"), which requires companies to reserve for sales returns at the gross sales price, as opposed to the replacement cost.

Class Plaintiffs have vigorously and effectively prosecuted this Action on behalf of the Class.  The first of three securities class actions against Medicis and certain of its executive officers was filed on October 3, 2008.  (Doc. No. 1.[3])  Class Plaintiff Darlene Oliver filed a complaint against Medicis and its officers on October 27, 2008.  (Civil Action No. 08-01964, Doc. No. 1.)  On March 11, 2009, the Court granted Steve Rand's motion for consolidation and appointment as Lead Plaintiff.  (Doc. No. 40.)  On May 18, 2009, Class Plaintiffs filed a Consolidated Amended Complaint against the Medicis Defendants and EY.  (Doc. No. 53.)  On December 1, 2009, the Court entered an order granting both the Medicis Defendants' and EY's motions to dismiss, but granted Class Plaintiffs the opportunity to file an amended complaint within thirty days.  (Doc. No. 71.)

---

[3]     Unless otherwise indicated, all docket references are to Civil Action No. 08-01821.

3

After conducting substantial further expert and factual investigation, on January 20, 2010, Class Plaintiffs filed their Second Amended Federal Securities Class Action Complaint (the "Complaint"), alleging violations of § 10(b) and § 20(a) of the Securities Exchange Act (the "Exchange Act") by Medicis, its senior executives, and EY. (Doc. No. 76.) The Complaint alleges that Medicis, with EY's imprimatur, improperly utilized the exclusion provided by footnote 3 of FAS 48 by reserving for short dated and expired product at replacement cost rather than gross sales price. On August 9, 2010, after extensive briefing by the parties, this Court denied the Medicis Defendants' and EY's motions to dismiss the Complaint, finding that although it was a "close call," the Complaint's allegations sufficiently alleged scienter against Defendants. (Doc. No. 92.)

Thereafter, on December 17, 2010, Class Plaintiffs filed their Motion for Class Certification, seeking certification of a class of all persons or entities that purchased or otherwise acquired Medicis common stock, or who purchased and/or sold options on Medicis common stock, from October 30, 2003 to September 23, 2008, both dates inclusive (the "Class Period"), and were damaged. (Doc. No. 114.) On March 8, 2011, after taking the depositions of Class Plaintiffs and obtaining the production of relevant documents in the possession of Class Plaintiffs, the Medicis Defendants filed an Opposition to Class Plaintiffs' Motion for Class Certification (Doc. No. 125), in which EY joined on March 10, 2011 (Doc. No. 126).

Additionally, throughout this Action, the parties have engaged in extensive discovery. Defendants have produced approximately 500,000 pages of documents, including the production of EY's workpapers of its Medicis audits, and Lead Counsel

4

has, among other things, reviewed such documents and conducted numerous witness interviews of former Medicis employees.

Moreover, the Settlement is the product of extensive, arm's-length negotiations that were facilitated by two retired and experienced federal judges.  In October 2010, after submitting six mediation briefs, the parties participated in a full day mediation session conducted by the Hon. Layn R. Phillips (Ret.).  At the first mediation session before Judge Phillips on October 8, 2010, Defendants agreed to engage in an "expedited discovery" process pursuant to which certain documents, including EY's Medicis workpapers, were produced to Class Plaintiffs.

After this initial mediation session, the parties agreed to participate in subsequent mediation sessions facilitated by the Hon. Nicholas H. Politan (Ret.).  On February 23 – 24 and March 24, 2011, after submitting three mediation briefs, the parties participated in mediation sessions conducted by Judge Politan.  The joint mediation sessions facilitated by Judge Phillips and Judge Politan focused on the parties' respective positions and evidence regarding various issues, including Defendants' alleged scienter, loss causation, and damages.  The mediation papers and sessions highlighted the fact that there was considerable disagreement among the parties regarding the Class Plaintiffs' claims, and their ability to prove loss causation and damages at trial.  In additional to formal mediation sessions, the parties engaged in numerous settlement discussions via telephone conference and other correspondence.  Finally, at the mediation session conducted by Judge Politan on March 24, 2011, the parties reached an oral agreement in principle to

settle this Action, which subsequently was confirmed in a Memorandum of

Understanding executed on behalf of all parties as of June 6, 2011.

 In order to verify the adequacy of the Settlement, Class Plaintiffs conducted

additional confirmatory discovery after the agreement in principle was reached, which

included the deposition of one EY audit partner, as well as in-person interviews of two

Medicis senior accounting personnel.  Moreover, Class Plaintiffs reviewed and analyzed

approximately 174,000 pages of additional documents produced by Medicis.

### III.    THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

"[T]here is a strong judicial policy that favors settlements, particularly where

complex class action litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d 1095,

1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th

Cir. 1993)).  The Ninth Circuit has stated:  "it must not be overlooked that voluntary

conciliation and settlement are the preferred means of dispute resolution.  This is

especially true in complex class action litigation . . . ."  *Id.* (quoting *Officers for Justice v.

Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

Although the procedure for approval of a class action settlement is not explicitly

delineated in Fed. R. Civ. P. 23(e), a two-step procedure is advanced by the Federal

District Court's Manual for Complex Litigation (Fourth) § 21.632 – § 21.634, at 320-22

(4th ed. 2004), and generally followed by federal courts considering class action

settlements.  *See, e.g.*, *Arnold v. Arizona Dep't. of Pub. Safety*, No. CV-01-1463-PHX-

LOA, 2006 WL 2168637, at *4 (D. Ariz. July 31, 2006) (citing *In re Jiffy Lube Sec.*

*Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)).  First, the court conducts a preliminary

approval or pre-notification hearing to determine whether to preliminarily approve the

settlement agreement.  *Arnold*, 2006 WL 2168637 at *4; *Jiffy Lube*, 927 F.2d at 158.

Second, assuming that the court grants preliminary approval and notice is sent to the

class, the court conducts a "fairness hearing," which provides all interested parties with

an opportunity to be heard on the proposed settlement.  *Id.*  The ultimate purpose of this

procedure is to ensure that the settlement is "fair, reasonable and adequate."  *Id.*; *Hanlon*

*v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

As is the case with final approval, the district courts are granted wide discretion in

making the first-stage determination regarding the reasonableness of particular class

action settlements.  *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986); *In re Mego Fin. Corp.*

*Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  "The Court should consider whether the

proposed settlement appears to be the product of serious, informed, non-collusive

negotiations, has no obvious deficiency, does not improperly grant preferential treatment

to class representatives or segments of the class and falls within the range of possible

approval."  *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009) (citations

omitted).  The Supreme Court has stated that approval of a class action settlement is

committed to the "sound discretion of the district courts to appraise the reasonableness of

particular class-action settlement on a case-by-case basis, in light of all the relevant

circumstances."  *Evans*, 475 U.S. at 742; *see also Hanlon*, 150 F.3d at 1026 (the decision

to approve or reject a settlement is committed to the sound discretion of the trial judge

because he is "exposed to the litigants, and their strategies, positions and proof") (internal

quotations omitted).  The Supreme Court has cautioned that in reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions."  *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981); *Evans*, 475 U.S. at 726-27; *Staton v. Boeing Co.*, 327 F.3d 938, 963 n.16 (9th Cir. 2003).  Instead, courts have consistently held that the function of the court reviewing a settlement is to determine whether the proposed settlement taken as a whole is fundamentally fair, adequate, and reasonable, and not to rewrite the settlement agreement or to resolve issues intentionally left unresolved by the parties.  *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice*, 688 F.2d at 628).

The Ninth Circuit has outlined eight factors to be considered in determining whether a settlement agreement is fundamentally fair, adequate, and reasonable:

> (1) the strength of the plaintiffs' case;
>
> (2) the risk, expense, complexity, and likely duration of further litigation;
>
> (3) the risk of maintaining class action status throughout the trial;
>
> (4) the amount offered in settlement;
>
> (5) the extent of discovery completed, and the stage of the proceedings;
>
> (6) the experience and views of counsel;
>
> (7) the presence of a governmental participant; and
>
> (8) the reaction of the class members to the proposed settlement.

*See, e.g.*, *Mego Fin. Corp.*, 213 F.3d at 458; *Hanlon*, 150 F.3d at 1026.  Courts have noted that this list is not exhaustive, the identified factors should not be viewed as more significant than other factors, and that not all factors are necessarily applicable to every

8

class action settlement.  *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Officers for Justice*, 688 F.2d at 625.  The Ninth Circuit has further cautioned that due to the danger that class action settlements could compromise the interests of class members in favor of the individual interests and incentives of class representatives and class counsel, the district court must also consider whether there was fraud, overreaching, or collusion in reaching the settlement.  *Staton*, 327 F.3d at 960.

When examined under these applicable criteria, the Settlement is an excellent result and fair, reasonable, and adequate.

**A.    The Strength of Plaintiffs' Case and the Significant Risk, Expense, Complexity and Likely Duration of Further Litigation All Support the Proposed Settlement**

Securities litigation is a complex and evolving area of law requiring the devotion of significant resources.  Defendants have denied all liability in this case.  Class Plaintiffs acknowledge that there were substantial risks in prosecuting this Action and that further prosecution of this Action to trial may have yielded limited or no recovery.  Indeed, in order to succeed on a § 10(b) claim, a plaintiff must establish (among other things) that defendants made material misstatements with scienter.  *See, e.g.*, *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009), *aff'd*, 131 S. Ct. 1309 (2011). Defendants argued vigorously in their briefing on both motions to dismiss that the interpretation of FAS 48 is inherently complex, and allegations of the violation of that provision are insufficient to establish Defendants' scienter.  The Court credited such arguments with respect to the first consolidated complaint, and granted Defendants' motion to dismiss.  While the Court denied Defendants' motion to dismiss the second

amended Complaint, it did so while opining that Class Plaintiffs' scienter allegations were a "close call." (Doc. No. 92.) While such allegations were found to be sufficient to defeat Defendants' motion to dismiss at the pleading stage, it is far from certain that Class Plaintiffs could have successfully proven Defendants' scienter at trial.

In addition to establishing scienter, Class Plaintiffs would have encountered significant hurdles in proving loss causation and damages at trial. Specifically, at the same time that Medicis announced the need to restate its financials, the Company also announced lower earnings guidance in part as a result of disappointing sales for its pharmaceutical products. It is far from certain that Class Plaintiffs could have proven at trial that the cause of the decline of Medicis common stock on September 24 was due to the announced restatement, as opposed to the Company's lowered earnings guidance.

Further, there could be substantial delay in resolving these claims. The case was filed in October 2008, and its relatively early resolution benefits the entire Class by saving the resources necessary to bring this Action to trial and potential subsequent appeals. When viewing the substantial immediate benefit to the Class in contrast to the numerous risks inherent in continuing to prosecute this Action, the Settlement is fair, reasonable, and adequate. *See In re Syncor ERISA Litig.*, 516 F.3d at 1101; *Nat'l Rural Telecom. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (unless settlement is clearly inadequate, approval is preferable to lengthy and expensive litigation with uncertain results).

**B.      The Settlement Amount Is Substantial**

The Settlement Amount of $18 million is a significant recovery for the Class. Lead Counsel, in consultation with its damages experts, estimates that this recovery represents between 20% and 60% of the Class's recoverable damages at trial.  As such, the Settlement Amount is clearly reasonable in light of the uncertainties of continued litigation.  *Mego Fin. Corp.*, 213 F.3d at 459.  In *Mego*, the Ninth Circuit approved a settlement that was 42% of estimated damages and stated that even using the objectors' damages estimates, a settlement of 14% would be fair.  *Id.*  The Ninth Circuit has also noted that "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628.

**C.      Class Plaintiffs Have Performed Sufficient Discovery and the Proceedings Are Sufficiently Advanced to Allow Class Plaintiffs to Reach an Informed Settlement Decision**

The proceedings in this Action were sufficiently advanced to provide Class Plaintiffs with a thorough understanding of the strengths and weaknesses of the Class's claims.  In particular, as described herein, two separate motions to dismiss were briefed by the parties and adjudicated by the Court.  *See, e.g.*, *In re Genta Sec. Litig.*, 2008 WL 2229843, at *2 (D.N.J. May 28, 2008) ("The motion to dismiss resolved many of the issues raised in the Amended Complaint, leaving Lead Plaintiffs and Defendants … with a solid understanding of the strengths and weaknesses of their respective positions.").  In addition, substantial discovery was taken by Class Plaintiffs before and after the parties achieved an agreement in principle to settle the Action.  As such, the settlement was

reached only after Lead Counsel had a thorough understanding of the strengths and vulnerabilities of the Class's claims.

### D. The Settlement Was Negotiated by Highly Experienced Lead Counsel, Who View It as Fair, Reasonable, and Adequate

Based on an exhaustive review of the relevant factors in this case, Lead Counsel is satisfied that the Settlement is fair, reasonable, adequate and in the best interests of the Class.  Lead Counsel, Pomerantz Haudek Grossman & Gross LLP, has extensive experience and a stellar reputation in the field of class action and securities litigation. (*See* Exhibit D to the Declaration of Patrick V. Dahlstrom in Support of Rand's Motion to Be Appointed Lead Plaintiff and Approval of Lead Counsel and Liason Counsel.  (Doc. No. 10.))  As discussed herein, this Action has been vigorously litigated by Lead Counsel.  Moreover, Lead Counsel conducted extensive confirmatory discovery after the parties achieved an agreement in principle.  Thus, Lead Counsel's opinion regarding the fairness and adequacy of the Settlement deserves great weight because of its familiarity with the issues involved in this Action and because of its extensive experience in securities class action litigation.  *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989) (citing *Officers for Justice*, 688 F.2d at 625).

### E. The Settlement Was Reached After Extensive and Adversarial Negotiations and Confirmatory Discovery, and Is Not a Product of Collusion

There was no collusion between the parties in reaching the Settlement.  As explained above, the Settlement is the result of an arm's length and adversarial

negotiation and mediation process.  All counsel represented the interests of their

respective clients vigorously and devoted a considerable amount of time, effort, and

resources to secure the terms of the Settlement.

### IV.    APPROVAL OF THE FORM AND METHOD OF NOTICE TO THE CLASS

Class Plaintiffs request that the Court enter the order approving the class Notice.

In order to satisfy due process, notice to class members must be "reasonably calculated,

under all the circumstances, to apprise interested parties of the pendency of the action and

afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank*

*& Trust Co.*, 339 U.S. 306, 314 (1950).  The notice should generally describe the terms of

the settlement "in sufficient detail to alert those with adverse viewpoints to investigate

and to come forward and be heard."  *Torrisi*, 8 F.3d at 1374, (citing *In re Cement and*

*Concrete Antitrust Litig.*, 817 F.2d 1435, 1440 (9th Cir. 1987)).

The proposed Notice, which will be published and also sent by first class mail, is

attached as Exhibit 1 to Exhibit A to the Stipulation of Settlement.  The Notice describes

in plain English the terms of the Settlement, the considerations that led Lead Counsel to

conclude that the Settlement is fair and adequate, the maximum attorneys' fees that may

be sought, the procedure for objecting to the Final Settlement, and the date and place of

the Settlement Hearing.  With the Court's approval, the Summary Class Notice will be

published within 10 days and mailed no later than 60 days prior to the Settlement

Hearing.

13

This proposed form of notice will fairly apprise Class members of the Settlement and their options with respect thereto and fully satisfies due process requirements.

## V.   THE CLASS CERTIFICATION MOTION SHOULD BE GRANTED

As set forth in Plaintiffs' Motion for Class Certification (Doc. No. 114), which Class Plaintiffs hereby incorporate by reference herein, the proposed Class meets all the requirements of Rule 23(a) and Rule 23(b)(3).  For the reasons set forth in Class Plaintiffs' motion, certification of the Class pursuant to Rule 23(b)(3) is appropriate and for the Court's convenience.  Class Plaintiffs have incorporated the certification of the Class in the proposed Preliminary Approval Order submitted as Exhibit A to the Stipulation of Settlement.[4]

## CONCLUSION

In light of the foregoing, Class Plaintiffs respectfully request that the Court enter an Order:  (1) preliminarily approving the parties' Stipulation of Settlement; (2) certifying the Class; and (3) setting a date for a Settlement Hearing and deadlines for the mailing of the Notice, the filing of Class member objections, the filing of Class member opt-out notices, and the filing of Lead Counsel's application for attorneys' fees and expenses.

---

[4]      Defendants' only opposition to the Class Certification motion focused on their challenges to Lead Plaintiff's adequacy and did not raise any challenge to Lead Counsel's experience or qualifications.  Class Plaintiffs contend that Defendants' opposition was without merit.  Irrespective of their differences, the parties have stipulated to certification of the Class solely for purposes of the Settlement.  *See* Settlement Stipulation ¶ 17.

14

Respectfully submitted this 21st day of September 2011.

**POMERANTZ HAUDEK
GROSSMAN & GROSS LLP**

By:  /s/ Jeremy A. Lieberman
Marc I. Gross
Jeremy A. Lieberman (*admitted pro hac vice*)
R. James Hodgson (*admitted pro hac vice*)
100 Park Avenue, 26th Floor
New York, New York  10017
Telephone:   (212) 661-1100
Facsimile:   (212) 661-8665

**POMERANTZ HAUDEK
GROSSMAN & GROSS LLP**
Patrick V. Dahlstrom (*admitted pro hac vice*)
Joshua B. Silverman
Leigh H. Smollar
Ten South LaSalle Street
Suite 3505
Chicago, Illinois  60603
Telephone:   (312) 377-1181
Facsimile:   (312) 377-1184

**MARTIN & BONNETT, PLLC**
Susan Martin (AZ# 014226)
Jennifer Kroll (AZ# 019859)
1850 North Central Avenue, Suite 2010
Phoenix, Arizona  85004
Telephone:   (602) 240-6900
Facsimile:   (602) 240-2345

*Attorneys for Lead Plaintiff Steve Rand and
Plaintiff Darlene Oliver*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

/s/  R. James Hodgson