SUSAN MARTIN (AZ# 014226)
JENNIFER KROLL (AZ# 019859)
**MARTIN & BONNETT P.L.L.C.**
1850 North Central Avenue, Suite 2010
Phoenix, Arizona  85004
Telephone:  (602) 240-6900
Facsimile:   (602) 240-2235
smartin@martinbonnett.com
jkroll@martinbonnett.com

**PATRICK V. DAHLSTROM**
(*pro hac vice*)
**POMERANTZ HAUDEK
  GROSSMAN & GROSS LLP**
Ten South La Salle Street, Suite 3505
Chicago, Illinois  60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
pdahlstrom@pomlaw.com

**MARC I. GROSS**
**JEREMY A. LIEBERMAN** (*pro hac vice*)
**R. JAMES HODGSON** (*pro hac vice*)
**POMERANTZ HAUDEK
  GROSSMAN & GROSS LLP**
100 Park Avenue, 26th Floor
New York, New York 10017
Telephone:  (212) 661-1100
Facsimile:   (212) 661-8665
migross@pomlaw.com
jalieberman@pomlaw.com
rjhodgson@pomlaw.com

*Attorneys for Lead Plaintiff Steven Rand
and Plaintiff Darlene Oliver*

**UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA**

| | |
|---|---|
| **IN RE MEDICIS PHARMACEUTICAL CORPORATION SECURITIES LITIGATION** | **Master File No.
CV-08-01821-PHX-GMS**

**MOTION IN SUPPORT OF
FINAL APPROVAL OF
PROPOSED SETTLEMENT
AND PLAN OF ALLOCATION
AND MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT THEREOF** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

MOTION ...................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

I.      INTRODUCTION ........................................................................... 1

II.     BACKGROUND AND HISTORY OF THE LITIGATION ........................... 2

III.    THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS
        ACTION SETTLEMENTS ................................................................. 6

        A.    The Ninth Circuit's Standards Governing Class Action Settlements ...... 7

        B.    An Analysis of the Ninth Circuit's Criteria Supports Final
              Approval of the Settlement ................................................... 9

              1.   The Amount Offered in Settlement Supports Final Approval ........ 9

              2.   The Reaction of the Class Members to the Settlement
                   Supports Final Approval ................................................. 12

              3.   The Relative Strength of Plaintiffs' Case Supports Final
                   Approval ..................................................................... 13

                   a) The Risk of Establishing Scienter ................................. 13

                   b) The Risk of Establishing Loss Causation and Damages ...... 14

              4.   The Risk, Expense, Complexity, and Likely Duration of the
                   Litigation Supports Final Approval ................................... 16

              5.   The Extent of Discovery Completed and the Stage of the
                   Proceedings Supports Final Approval ................................. 17

              6.   The Experience and Views of Counsel Support Final
                   Approval ..................................................................... 18

              7.   The Risk of Maintaining the Class Action Through Trial
                   Supports Final Approval ................................................. 19

              8.   The Absence of Fraud or Collusion Also Supports Final
                   Approval ..................................................................... 20

i

IV.    THE PROPOSED SETTLEMENT CLASS MEETS THE
       REQUIREMENTS FOR CLASS CERTIFICATION UNDER RULE 23.... 20

       A.    Numerosity ................................................................................. 22

       B.    Commonality ............................................................................... 22

       C.    Typicality .................................................................................... 22

       D.    Adequacy ..................................................................................... 23

       E.    Common Questions Predominate ................................................ 23

       F.    Superiority of The Class Action ................................................. 24

V.     THE PLAN OF ALLOCATION SHOULD BE APPROVED ..................... 24

VI.    NOTICE TO THE SETTLEMENT CLASS COMPLIED WITH DUE
       PROCESS ............................................................................................. 26

CONCLUSION .......................................................................................... 27

1

## <u>TABLE OF AUTHORITIES</u>

2

3

<u>Page(s)</u>

### FEDERAL CASES

4

5

*Amchem Products Inc. v. Windsor,*
    521 U.S. 591 (1997) .............................................................................. 21, 23, 24

6

7

*In re Austrian & German Bank Holocaust Litigation,*
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................ 18

8

9

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975)............................................................................ 22

10

11

*Bricklayers & Trowel Trades International Pension Fund v. Credit Suisse*
    *First Boston,* 2012 U.S. Dist. LEXIS 4566 (D. Mass. Jan. 13, 2012) ............... 15

12

13

*In re Broadcom Corp. Sec. Litigation,*
    2005 U.S. Dist. LEXIS 41976 (C.D. Cal. Sept. 12, 2005).................................. 25

14

15

*In re Charter Communs., Inc.,*
    2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005).................................. 25

16

17

*Churchill Village, L.L.C. v. GE,*
    361 F.3d 566 (9th Cir. 2004)............................................................................ 11

18

*Class Plaintiffs v. Seattle,*
    955 F.2d 1268 (9th Cir. 1992)................................................................ 6, 18, 24

19

20

*In re Genta Sec. Litigation,*
    2008 U.S. Dist. LEXIS 41658 (D.N.J. May 28, 2008) ...................................... 17

21

22

*In re Crazy Eddie Sec. Litigation,*
    824 F. Supp. 320 (E.D.N.Y. 1993)................................................................... 10

23

24

*In re Heritage Bond Litig.,*
    2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005)............................ 19, 24

25

26

*Denney v. Deutsche Bank AG,*
    443 F.3d 253 (2d Cir. 2006) ............................................................................ 16

27

28

iii

*Denney v. Jenkens & Gilchrist*,
    230 F.R.D. 317 (S.D.N.Y. 2005)..................................................................... 16

*Dukes v. Wal Mart Stores*,
    603 F.3d 571 (9th Cir. 2010) ....................................................................... 23

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ...................................................................................... 26

*In re First Capital Holdings Corp. Finance Products Sec. Litigation*,
    1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992)............................... 18

*Fulford v. Logitech, Inc.*,
    2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010) ......................................7

*In re Global Crossing SEC & ERISA Litigation*,
    225 F.R.D. 436 (S.D.N.Y. 2004)..................................................................... 17

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)........................................................ 6, 9, 12, 21

*Holden v. Burlington N., Inc.*,
    665 F. Supp. 1398 (D. Minn. 1987) .............................................................. 10

*In re Immune Response Sec. Litigation*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) .......................................................... 20

*In re Scientific Atlanta, Inc. Sec. Litigation*,
    754 F. Supp. 2d 1339 (N.D. Ga. 2010) .......................................................... 15

*Maywalt v. Parker & Parsley Petroleum Co.*,
    1997 U.S. Dist. LEXIS 97 (S.D.N.Y. Jan. 6, 1997)........................................ 25

*In re Mego Finance Corp. Sec. Litigation*,
    213 F.3d 454 (9th Cir. 2000)............................................................... 8, 10, 12

*In re Manufacturers Life Insurance Co. Premium Litigation*,
    1998 U.S. Dist. LEXIS 23217 (S.D. Cal. Dec. 18, 1998)................................. 14

*In re Michael Milken & Associates Sec. Litigation*,
    150 F.R.D. 46 (S.D.N.Y. 1993)....................................................................... 13

*National Rural Telcomms. Cooperative v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ................................................................. 12, 16

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ..................................................................... 9

*In re Nissan Motor Corp. Antitrust Litigation*,
  552 F.2d 1088 (5th Cir. 1977) ...................................................................... 26

*Officers for Justice v. Civil Service Commission*,
  688 F.2d 615 (9th Cir. 1982) ............................................................... passim

*In re Omnivision Technology Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ....................................................... 6, 19

*In re Pac. Enterprises Sec. Litigation*,
  47 F.3d 373 (9th Cir. 1995) ..................................................................... 6

*Peters v. National R.R. Passenger Corp.*,
  966 F.2d 1483 (D.C. Cir. 1992) ....................................................................... 26

*In re Rite Aid Corp. Sec. Litigation*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001) ..................................................... 10

*Schwartz v. TXU Corp.*,
  2005 U.S. Dist. LEXIS 27077 (N.D. Tex. Nov. 8, 2005) ................................... 19

*Siracusano v. Matrixx Initiatives, Inc.*,
  585 F.3d 1167 (9th Cir. 2009), *aff'd*, 131 S. Ct. 1309 (2011) .......................... 13

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ..................................................................... 7, 8

*Stoetzner v.  U.S. Steel Corp.*,
  897 F.2d 115 (3d Cir. 1990) ..................................................................... 12

*In re Syncor ERISA Litigation*,
  516 F.3d 1095 (9th Cir. 2008) ..................................................................... 6, 16

*Teachers' Retirement System of La. v. A.C.L.N.*,
  2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) ..................................... 18

v

*Torrisi v. Tucson Electric Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ....................................................................... 6, 8, 16

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) .............................................................................. 6

*In re Verisign, Inc. Sec. Litigation*,
    2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13, 2005) ................................. 22

*In re Wash. Public Power Supply System Sec. Litigation*,
    720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom., Class Plaintiffs v. Seattle*, 955
    F.2d 1268 (9th Cir. 1992) ........................................................................... 18, 19

*Williams v. First National Bank*,
    216 U.S. 582 (1910) ............................................................................................ 6

*Yamner v. Boich*,
    1994 U.S. Dist. LEXIS 20849 (N.D. Cal. Sept. 15, 1994) ................................ 21

**DOCKETED CASES**

*In re Accuray Inc. Sec. Litigation*,
    No. 4:09-CV-03362-CW (N.D. Cal. 2011) ......................................................... 9

*In re Alliance Equipment Release Program Sec. Litigation*,
    No. 98-CV-2150 J (NLS) (S.D. Cal. 2001) ...................................................... 10

*In re Amylin Pharm. Inc. Sec. Litigation*,
    No. CV-01-1455 LAB (WMc) (S.D. Cal. 2004) ............................................... 10

*Batwin v. Occam Networks, Inc.*,
    No. 2:07-cv-02750-CAS (SHx) (C.D. Cal. 2010) .............................................. 9

*In re Biolase Technology, Inc. Sec. Litigation*,
    No. 04-cv-00947 (C.D. Cal. 2007) ................................................................... 10

*In re Countrywide Fin'l Corp. Sec. Litig.*,
    No. CV-07-05295 MRP (MAN) (C.D. Cal.) ..................................................... 11

*Fouad v. Isilon System, Inc.*,
    No. C07-1764 (D. Wash. 2010) ......................................................................... 9

*In re Gilead Sciences Sec. Litigation*,
    No. C-03-4999-SI (N.D. Cal. 2010)......................................................9

*In re Global Cash Access Holdings, Inc. Sec. Litigation*,
    No. 2:08-CV-01320-JCM-PAL (D. Nev. 2010) ....................................9

*HCL Partners LP v. Leap Wireless International Inc.*,
    No. 07-CV-2245 MMA (S.D. Cal. 2010) ..............................................9

*In re Heritage Bond Litigation*,
    MDL No. 02-ML-1475(C.D. Cal. June 10, 2005) .............................. 19

*In re LJ International Inc., Sec. Litigation*,
    No. CV-07-6076-GAF (JWJx) (C.D. Cal. 2009) ............................... 10

*In re Maxim Pharm. Inc. Sec. Litigation*,
    No. 04 CV 1900 (BLM) (S.D. Cal. 2006)......................................... 10

*In re Metawave Committee Corp. Sec. Litigation*,
    No. C02-625RSM (W.D. Wash. 2010) ............................................. 10

*In re Nuvelo, Inc. Sec. Litigation*,
    No. 07-CV-4056 (N.D. Cal. 2011).......................................................9

*Ramsey v. MRV Communications, Inc.*,
    No. 08-04561 (GAF) (C.D. Cal. 2010) ...............................................9

*In re Semtech Corp. Sec. Litigation*,
    No. 2:07-cv-07114-CAS (C.D. Cal. 2011)........................................ 10

*In re Shuffle Master, Inc. Sec. Litigation*,
    No. 2:07-cv-00715-KJD-RJJ (D. Nev. 2010) ................................... 10

*In re THQ, Inc., Sec. Litigation*,
    No. CV-001783 (C.D. Cal. Mar. 22, 2002)....................................... 21

*Tsirekidze v. Syntax-Brillian Corp.*,
    No. 2:07-cv-02204-FJM (D. Ariz. 2010) .......................................... 10

# FEDERAL STATUTES

Fed. R. Civ. P. 23(a)(1) ........................................................... 21

Fed. R. Civ. P. 23(a)(2) ........................................................... 22

Fed. R. Civ. P. 23(b)(3) ..................................................... 21, 24

# MISCELLANEOUS

*Symposium: Securities Litigation Reform:*
   *The Joint & Several vs. Proportionate Liability Debate:*
   *An Empirical Investigation of Audit-Related Litigation* ..................................... 11

viii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MOTION

Court-appointed Lead Plaintiff Steven Rand and Class Plaintiff Darlene Oliver hereby move this Court for the entry of an order and judgment:  (i) granting final approval of the proposed Settlement[1] and Plan of Allocation, which were preliminarily approved by the Court on November 2, 2011 (Doc. No. 141); (ii) finally certifying the proposed Class for purposes of the Settlement; (iii) finding that notice to the Class satisfied due process; and (iv) entering the proposed Judgment and Order of Dismissal with Prejudice of this Action.  This motion is accompanied by a separate motion asking that the Court make an award of fees and expenses if the Settlement is approved.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Class Plaintiffs present this Settlement to the Court for final approval.  As described in further detail below, and in the accompanying Declaration of Jeremy A. Lieberman, dated January 19, 2012 (the "Lieberman Decl."), the Settlement was reached after an extensive investigation conducted by Lead Counsel; the filing of three factually detailed complaints; contentious motion practice, including two motions to dismiss; lengthy discovery, including voluminous document review and multiple depositions; and arm's-length settlement negotiations conducted over many months.

In furtherance of the Settlement, Defendant Medicis has caused to be paid $11 million in cash, and Defendant EY paid $7 million in cash, into an interest-bearing escrow account for the benefit of the Class, in exchange for the dismissal and full release of all claims brought against Defendants.[2]  Defendants deny wrongdoing or liability in

---

[1]   Capitalized terms not defined herein shall have those meanings ascribed to them in the Stipulation of Settlement dated as of September 21, 2011 (Doc. No. 137).

[2]   In addition to Medicis and EY, Defendants include Jonah Shacknai, Richard D. Peterson, and Mark A. Prygocki.

all respects and admit nothing as part of the Settlement.

The Gross Settlement Fund of $18 million (plus interest) will be used for the payment of taxes, notice to the Class, and administrative costs; for Court-awarded attorneys' fees and expenses; and for Court-awarded Class Plaintiff compensatory awards.  The cash remainder after these expenditures will be distributed, pursuant to the Plan of Allocation contained in the Notice, to members of the Class who are not otherwise excluded from the Class, and who submit valid and timely Proofs of Claim to the claims administrator.

In light of Class Plaintiffs' informed assessment of the strengths and weaknesses of the Class's claims and the defenses thereto, and based on their litigation and settlement efforts over the pendency of this Action and the considerable risks and delays associated with continued litigation and trial, Class Plaintiffs and their counsel believe that the Settlement is eminently fair, reasonable and adequate and provides a substantial benefit to the Class.  Accordingly, Class Plaintiffs respectfully request that the Court grant final approval of this Settlement.  In addition, the Plan of Allocation, which was developed with the assistance of Class Plaintiffs' damages expert, is a fair and reasonable method for distributing the Net Settlement Fund to the Class, and also warrants the Court's final approval.

## II.   BACKGROUND AND HISTORY OF THE LITIGATION[3]

This Action arises as a result of the Company's announcement on September 24, 2008 that it would be required to restate its audited financial statements from 2003 to 2007, and its interim financial statements for the first two quarters of fiscal 2008, due to

---

[3]   This section is provided for the Court's immediate convenience.  Class Plaintiffs respectfully refer the Court to the accompanying Lieberman Decl. for a full discussion of, *inter alia*, the factual and procedural history of the litigation, the claims asserted by Class Plaintiffs, the efforts undertaken by Class Plaintiffs and their counsel during the course of the litigation, the significant risks of continued litigation, and the negotiations leading to the present Settlement.

2

a violation of Generally Accepted Accounting Principles ("GAAP").   Specifically, Medicis announced that the Company's prior financial statements required restatement due to its error in interpreting and applying Statement of Financial Accounting Standards No. 48, *Revenue Recognition When a Right of Return Exists* ("SFAS 48"), which requires companies to reserve for sales returns at the gross sales price, as opposed to the replacement cost.   Class Plaintiffs allege that Defendants purposefully misapplied SFAS 48 in order continue its channel stuffing practices for the purposes of manipulating reported revenues.

Class Plaintiffs have vigorously and effectively prosecuted this Action on behalf of the Class.   The first of three securities class actions against Medicis and certain of its executive officers was filed on October 3, 2008.   (Doc. No. 1.)   Class Plaintiff Darlene Oliver filed a complaint against Medicis and its officers on October 27, 2008.   (Civil Action No. 08-01964, Doc. No. 1.)   On March 11, 2009, the Court granted Steven Rand's motion for consolidation and appointment as Lead Plaintiff.   (Doc. No. 40.)   On May 18, 2009, Class Plaintiffs filed a Consolidated Amended Complaint against the Medicis Defendants and EY.   (Doc. No. 53.)   On December 1, 2009, the Court entered an order granting both the Medicis Defendants' and EY's motions to dismiss, but granted Class Plaintiffs the opportunity to file an amended complaint within thirty days. (Doc. No. 71.)   After conducting substantial further expert and factual investigation, on January 20, 2010, Class Plaintiffs filed their Second Amended Federal Securities Class Action Complaint (the "Complaint"), alleging violations of § 10(b) and § 20(a) of the Securities Exchange Act (the "Exchange Act") by Medicis, its senior executives, and EY.   (Doc. No. 76.)   The Complaint alleges that Medicis, with EY's imprimatur, improperly utilized the exclusion provided by footnote 3 of SFAS 48 by reserving for short dated and expired product at replacement cost rather than gross sales price.   On August 9, 2010, after extensive briefing by the parties, this Court denied the Medicis

Defendants' and EY's motions to dismiss the Complaint, finding that although it was a "close case," the Complaint's allegations sufficiently alleged scienter against Defendants. (Doc. No. 92.)

Thereafter, on December 17, 2010, Class Plaintiffs filed their Motion for Class Certification, seeking certification of a class of all persons or entities that purchased or otherwise acquired Medicis common stock, or who purchased and/or sold options on Medicis common stock, from October 30, 2003 to September 23, 2008, both dates inclusive (the "Class Period"), and were damaged. (Doc. No. 114.) On March 8, 2011, after taking the depositions of Class Plaintiffs and obtaining the production of relevant documents in the possession of Class Plaintiffs, the Medicis Defendants filed an Opposition to Class Plaintiffs' Motion for Class Certification (Doc. No. 125), in which EY joined on March 10, 2011 (Doc. No. 126). This motion was *sub judice* at the time the parties reached an agreement in principle.

Additionally, throughout this Action, the parties have engaged in extensive discovery. Defendants have produced approximately 500,000 pages of documents, including the production of EY's workpapers of its Medicis audits, and Lead Counsel has, among other things, reviewed such documents and conducted numerous witness interviews of former Medicis employees. In order to assist Lead Counsel in analyzing E&Y's work papers, Lead Counsel retained a team of forensic accounts from Marks Paneth & Shron LLP ("Marks Paneth") and another expert in reserve accounting to provide guidance regarding the Company's treatment of sales return reserves, as well as the Company's restatement.

In addition, Class Plaintiffs retained damages experts in order to assist Class Plaintiffs in the assessment of the damages suffered by the Class, as well as to analyze any loss causation defenses available to Defendants.

The Settlement is the product of extensive, arm's-length negotiations that were facilitated by two retired and experienced federal judges.   In October 2010, after submitting six mediation briefs, the parties participated in a full day mediation session conducted by the Hon. Layn R. Phillips (Ret.).   At the first mediation session before Judge Phillips on October 8, 2010, Defendants agreed to engage in an "expedited discovery" process pursuant to which certain documents, including EY's Medicis workpapers, were produced to Class Plaintiffs.

After this initial mediation session, the parties agreed to participate in subsequent mediation sessions facilitated by the Hon. Nicholas H. Politan (Ret.).   On February 23 – 24 and March 24, 2011, after submitting three mediation briefs, the parties participated in mediation sessions conducted by Judge Politan.   The mediation sessions conducted by Judge Politan were held in Tampa, Florida.

The joint mediation sessions facilitated by Judge Phillips and Judge Politan focused on the parties' respective positions and evidence regarding various issues, including Defendants' alleged scienter, loss causation, and damages.   The mediation papers and sessions highlighted the considerable disagreement between the parties regarding the Class Plaintiffs' claims, and their ability to prove loss causation and damages at trial.   In additional to formal mediation sessions, the parties engaged in numerous settlement discussions via telephone conference and other correspondence. Finally, at the mediation session conducted by Judge Politan on March 24, 2011, the parties reached an oral agreement in principle to settle this Action, which subsequently was confirmed in a Memorandum of Understanding executed on behalf of all parties as of June 6, 2011.

In order to verify the adequacy of the Settlement, Class Plaintiffs conducted additional confirmatory discovery after the agreement in principle was reached, which included the deposition of one EY audit partner, as well as in-person interviews of two

Medicis senior accounting personnel.  Moreover, Class Plaintiffs reviewed and analyzed approximately 174,000 pages of additional documents produced by Medicis.  Thereafter, negotiations continued over the terms of the release and other matters, culminating in a Stipulation of Settlement (the "Stipulation") dated September 21, 2011, whereby Defendants agreed to pay $18 million in cash in exchange for the release of all claims other than those asserted in the derivative actions.

## III.    THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

The settlement of complex class action litigation is clearly favored by the courts. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Service Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982).  "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.") (citing *Class Plaintiffs*, 955 F.2d at 1276).[4]

A settlement represents an exercise of judgment by the negotiating parties. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Thus, a court's inquiry should be limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *In re Omnivision Tech. Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) (citing

---

[4]  Indeed, the law has always favored the compromise of disputed claims (*see, e.g.*, *Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)), including those claims asserted in stockholder class actions.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

*Officers*, 688 F.2d at 625).   Moreover, courts have found that a strong initial presumption of fairness attaches to a proposed settlement if the settlement is reached by experienced counsel after arm's-length negotiations.  *See Fulford v. Logitech, Inc.*, No. 08-2041, 2010 U.S. Dist. LEXIS 29042, at *7 (N.D. Cal. Mar. 5, 2010) (finding presumption of fairness where "[c]ounsel for both parties ha[d] extensive experience in complex litigation, and they reached the Settlement [] after vigorous litigation and extensive arm's-length negotiation about the specific terms of the Settlement").

This initial presumption of fairness applies here because a substantial settlement was reached by experienced, fully-informed counsel after several years of hard-fought litigation.   This included an extensive investigation conducted by Lead Counsel; the filing of three factually detailed complaints; contentious motion practice, including two motions to dismiss; lengthy discovery, including voluminous document review and multiple depositions; and arm's-length settlement negotiations conducted over many months.  *See* Lieberman Decl. ¶¶ 28-37; 40-46.  As attested to by Judge Politan, who presided over multiple mediation sessions between the parties:

> [T]he settlement represents the result of arm's length negotiations by very experienced and informed counsel and, based on my own knowledge of the merits of the claims and defenses, a very reasonable outcome for all parties involved.

Declaration of Nicholas H. Politan ("Politan Decl.") ¶ 2.

Indeed, Class Plaintiffs and their counsel were fully informed of the merits and weaknesses of the litigation when the Settlement was reached, and thus, no doubt exists that the Settlement now before the Court is entitled to this presumption of fairness.

**A.**     **The Ninth Circuit's Standards Governing Class Action Settlements**

The standard for reviewing a proposed settlement of a class action in the Ninth Circuit, as in other circuits, is whether the proposed settlement is "fair, reasonable and adequate."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *Officers*, 688 F.2d

at 625.  A proposed settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued."   MANUAL FOR COMPLEX LITIGATION, FOURTH §30.42 (2004).   To that end, the Ninth Circuit has identified the following factors to consider in deciding whether to approve a proposed settlement of a class action:  (1) the amount offered in settlement; (2) the reaction of the class members to the proposed settlement; (3) the strength of plaintiffs' case; (4) the risk, expense, complexity, and likely duration of further litigation; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the risk of maintaining class action status throughout the trial.[5]  *See Officers*, 688 F.2d at 625 (holding that the importance of any one factor "depend[s] upon . . . the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case").

Courts have noted that this list is not exhaustive, the identified factors should not be viewed as more significant than other factors, and that not all factors are necessarily applicable to every class action settlement.  *Torrisi*, 8 F.3d at 1376; *Officers*, 688 F.2d at 625.  The Ninth Circuit has further cautioned that due to the danger that class action settlements could compromise the interests of class members in favor of the individual interests and incentives of class representatives and class counsel, the district court must also consider whether there was fraud, overreaching, or collusion in reaching the settlement.  *Staton*, 327 F.3d at 960; *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

---

[5] The Ninth Circuit also cites the "presence of a governmental participant" pursuing claims as a factor for consideration; however, this factor is not applicable in this Action. *See Officers*, 688 F.2d at 625.

454, 458 (9th Cir. 2000) ("[T]he settlement may not be the product of collusion among the negotiating parties.").

When examined under the applicable criteria, each of these factors supports a finding that the Settlement is fair, reasonable and adequate and should be approved by the Court.

**B.**      **An Analysis of the Ninth Circuit's Criteria Supports Final Approval of the Settlement**

        **1.**      **The Amount Offered in Settlement Supports Final Approval**

As a result of the Settlement, the Class will receive $18 million plus interest in cash, which represents a substantial recovery that falls well within the range of a fair, reasonable and adequate recovery.  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("[I]n any case there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion"); *see also Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

The $18 million Settlement amount is well within the range of reasonableness when compared to similar securities class action settlements recently achieved within the Ninth Circuit.  *See, e.g.*, *In re Accuray Inc. Sec. Litig.*, No. 4:09-CV-03362-CW (N.D. Cal. 2011) ($13.5 million); *In re Gilead Sciences Sec. Litig.*, No. C-03-4999-SI (N.D. Cal. 2010) ($8.25 million); *In re Global Cash Access Holdings, Inc. Sec. Litig.*, No. 2:08-CV-01320-JCM-PAL (D. Nev. 2010) ($5.875 million); *Fouad v. Isilon Sys., Inc.*, No. C07-1764 MJP (D. Wash. 2010) ($15 million); *HCL Partners LP v. Leap Wireless Int'l Inc.*, No. 07-CV-2245 MMA (S.D. Cal. 2010) ($13.75 million); *Ramsey v. MRV Communications, Inc.*, No. 08-04561 (GAF) (RCx) (C.D. Cal. 2010) ($10 million); *In re Nuvelo, Inc. Sec. Litig.*, No. 07-CV-4056 (N.D. Cal. 2011) ($8.9 million); *Batwin v.*

*Occam Networks, Inc.*, No. 2:07-cv-02750-CAS (SHx) (C.D. Cal. 2010) ($13.945 million); *Middlesex Ret. Sys. v. Quest Software, Inc.*, No. CV 06-6863-DOC (RNBx) (C.D. Cal. 2010) ($29.4 million); *In re Semtech Corp. Sec. Litig.*, No. 2:07-cv-07114-CAS (C.D. Cal. 2011) ($20 million); *In re Shuffle Master, Inc. Sec. Litig.*, No. 2:07-cv-00715-KJD-RJJ (D. Nev. 2010) ($13 million); *Tsirekidze v. Syntax-Brillian Corp.*, No. 2:07-cv-02204-FJM (D. Ariz. 2010) ($10 million).

In fact, many securities cases in this Circuit settle for much less than the Settlement obtained here. *See, e.g., In re Metawave Comm. Corp. Sec. Litig.*, No. C02-625RSM (W.D. Wash. 2010) ($1.5 million); *In re LJ Int'l Inc., Sec. Litig.*, No. CV-07-6076-GAF (JWJx) (C.D. Cal. 2009) ($2 million); *In re Biolase Tech., Inc. Sec. Litig.*, No. 04-cv-00947 (C.D. Cal. 2007) ($1.95 million); *In re Maxim Pharm. Inc. Sec. Litig.*, No. 04 CV 1900 (BLM) (S.D. Cal. 2006) ($1 million in cash, $1.3 million in stock); *In re Amylin Pharm. Inc. Sec. Litig.*, No. CV-01-1455 LAB (WMc) (S.D. Cal. 2004) ($2.1 million); *In re Alliance Equip. Release Program Sec. Litig.*, No. 98-CV-2150 J (NLS) (S.D. Cal. 2001) ($2 million).

In addition, Lead Counsel estimates that, taking into account the loss causation defenses available to Defendants, the $18 million Settlement represents 20% – 60% of the recoverable damages suffered by the Class—well above the average settlement for similar securities class actions. *See, e.g., In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing studies indicating that the average securities fraud class action settlement since 1995 has resulted in a recovery of 5.5% – 6.2% of estimated losses); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) (approving settlement that was 10% of estimated maximum recovery); *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987) ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *see also Mego*

*Fin. Corp.*, 213 F.3d at 459 (approving a settlement that was 42% of estimated damages and stating that even using the objectors' damages estimates, a settlement of 14% would be fair"). It is worth noting that the Ninth Circuit has held that "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers*, 688 F.2d at 628.

Lead Counsel believes that the $18 million Settlement, which represents 20% – 60% of the recoverable damages suffered by the Class, is an exceptional result that strongly supports the fee request. Moreover, the $7 million contribution by Medicis's auditor, EY, represents an extraordinary benefit for the Class. EY's contribution— which totals 38% of the total Settlement Fund—represents a far greater percentage of contribution by an auditor defendant than achieved in most securities class actions. *See Symposium: Securities Litigation Reform: The Joint & Several vs. Proportionate Liability Debate: An Empirical Investigation of Audit-Related Litigation*, 1 Stan. J.L. Bus. & Fin. 53 (1994) (finding that, in securities litigation involving Exchange Act claims, auditors' percentage contributions to settlements average 17%); *In re Countrywide Fin'l Corp. Sec. Litig.*, CV-07-05295 MRP (MAN) (C.D. Cal.) (auditor contributed only 3.8% of the $624 million settlement).

Moreover, the fairness and adequacy of the Settlement is also underscored by the serious obstacles that the Class faced in succeeding on the merits. *See generally Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004) (citing risk, expense, complexity, and likely duration of further litigation as factors supporting final approval of settlement). Class Plaintiffs would have still needed to prevail through costly and prolonged litigation, as well as successfully combat Defendants' significant challenges to scienter, loss causation, and damages at summary judgment and trial. Lieberman Decl. ¶¶ 49-54. In view of all of these critical risks, Class Plaintiffs concluded that the

11

$18 million Settlement represents a fair, reasonable and adequate resolution of this Litigation.

### 2.   The Reaction of the Class Members to the Settlement Supports Final Approval

The reaction of a class to a settlement is a significant factor in assessing its fairness and adequacy.  Indeed, "it is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement are favorable to the class members."  *Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

To date, more than 110,000 copies of the Notice have been mailed to potential Class members or their nominees, and a summary notice was transmitted over *Business Wire* on December 22, 2011.[6]  And as set forth in the Notice, the deadline for objecting to the Settlement or requesting exclusion from the Class is February 2, 2012.  As of the filing of this motion, there have been only two requests for exclusion.   Fraga Decl.¶ 9.  However, neither of these requests appear to be from Class Members, as their exclusions indicate that they are not members of the Class as they did not purchase Medicis common stock or call options, or sell put options, during the Class Period.  *Id*[7]

A favorable reaction by a class—as is the case with the Class here—is a testament to the fairness of a settlement.  *See Hanlon*, 150 F.3d at 1027 (that the "overwhelming majority" stayed in the class is "objective positive commentary as to its fairness"); *Mego*, 213 F.3d at 459 (finding that the district court did not err in approving settlement where there was a handful of objectors and one opt-out in a class of 5,400); *Stoetzner v.*

---

[6] *See* ¶ 6 of the Affidavit of Jose C. Fraga (the "Fraga Decl."), submitted on behalf of the Court-authorized claims administrator for the Settlement, The Garden City Group, Inc. ("GCG"), and annexed to the Lieberman Decl.

[7] On February 17, 2012, after the February 2, 2012 deadline for submitting objections or exclusions has elapsed, Class Plaintiffs will provide the Court with updated information regarding the amount of exclusions and objections to the Settlement received, if any.

*U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (similar).  Clearly, the positive reaction of the Class in this litigation weighs heavily in favor of approving the Settlement.

### 3.     The Relative Strength of Plaintiffs' Case Supports Final Approval

Securities litigation is a complex and evolving area of law requiring the devotion of significant resources.  Defendants have denied all liability in this case.  Class Plaintiffs acknowledge that there were substantial risks in prosecuting this Action and that further prosecution of this Action to trial may have yielded limited or no recovery. In determining the Settlement's fairness, Class Plaintiffs carefully considered and analyzed the potential risks to continued litigation, the delays involved, and in light of such considerations, believe the Settlement is in the best interests of the Settlement Class.  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (holding that, when evaluating securities class action settlements, courts have long recognized such litigation to be "notably difficult and notoriously uncertain").  Class Plaintiffs faced substantial risks in proving their Exchange Act claims as follows.

### a)     *The Risk of Establishing Scienter*

In order to succeed on a §10(b) claim, a plaintiff must establish (among other things) that defendants made material misstatements with scienter.  *See, e.g.*, *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009), *aff'd*, 131 S. Ct. 1309 (2011).  Defendants argued vigorously in their briefing on both motions to dismiss that the interpretation of SFAS 48 is inherently complex, and allegations of the violation of that provision are insufficient to establish Defendants' scienter.  Moreover, Defendants argued that the fact that the restatement resulted in an aggregate increase in reported net revenues rebutted any possible motive on Defendants' part to violate SFAS 48.  The Court credited such arguments with respect to the first consolidated complaint, and granted Defendants' motion to dismiss.  While the Court denied Defendants' motion to

13

dismiss the second amended Complaint, it did so only narrowly, opining that Class Plaintiffs' scienter allegations comprised a "close case." (Doc. No. 92.) While such allegations were found to be sufficient to defeat Defendants' motion to dismiss at the pleading stage, it is far from certain that Class Plaintiffs could have successfully proven Defendants' scienter at trial.

Class Plaintiffs anticipated that Defendants would have vigorously pursued the foregoing scienter defenses, and others, and to assert each of them at summary judgment, trial, and on any appeal. *See In re Mfrs. Life Ins. Co. Premium Litig.*, No. 96-cv-230, 1998 U.S. Dist. LEXIS 23217, at *17 (S.D. Cal. Dec. 18, 1998) ("[E]ven if it is assumed that a successful outcome for plaintiffs at summary judgment or at trial would yield a greater recovery than the Settlement—which is not at all apparent—there is easily enough uncertainty in the mix to support settling the dispute rather than risking no recovery in future proceedings.") (citation omitted).

### b) The Risk of Establishing Loss Causation and Damages

Moreover, Defendants also had very strong—if not crippling—loss causation defenses at their disposal. Specifically, as set forth in the Lieberman Decl., the September 24, 2008 announcement of Company's need to restate its financials was also accompanied by Medicis's announcement that it was suspending its previously stated revenue guidance for a number of reasons, including: (1) the restatement; (2) uncertainty regarding the Company's revenues from its blockbuster drug SOLYDYN® due to the anticipated entry of generic competition; (3) the Company's reduction of SOLYDYN® inventories in anticipation of generics entering the market; and (4) the impact of the global economic downturn on the aesthetic pharmaceutical market. Lieberman Decl. ¶ 52.

In light of these confounding disclosures, Defendants were certain to argue at summary judgment and trial that the reason for Medicis's $2.34 stock price decline was

14

not due to the announcement of the restatement, but rather to the announcement of the other adverse information which had a negative impact on the Company's future revenues.   Indeed, in the wake of the September 24, 2008 announcement, analysts focused far more on the impact of the non-restatement related disclosures, and barely made any mention of the restatement.  As such, Class Plaintiffs would have struggled to demonstrate at trial to what extent the September 24 stock price decline was attributable to the restatement, if at all.

In similar circumstances, several courts have either dismissed or granted summary judgment against plaintiffs for the inability to establish loss causation.   In *In re Scientific Atlanta, Inc. Sec. Litig.,* 754 F. Supp. 2d 1339, 1380 (N.D. Ga. 2010), the court granted defendants' motion for summary judgment on loss causation grounds, holding that class plaintiffs did not meet their burden of disentangling the fraud-related portion of the stock drop as opposed to non-fraud-related disclosures.  *Id.* at 1379; *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Boston*, 2012 U.S. Dist. LEXIS 4566, at *23-24 (D. Mass. Jan. 13, 2012) (same).  As such, Class Plaintiffs faced significant risk of Defendants succeeding at summary judgment on loss causation grounds.  Furthermore, even if the Court were to have denied such a summary judgment motion by Defendants on loss causation grounds, Plaintiffs' damages could have been severely curtailed at trial in light of a finding by a jury that only a fraction of the September 24, 2008 stock price drop was attributable to the restatement.

Thus, the uncertainties concerning scienter, loss causation, and damages strongly support approval of the Settlement.   In addition, there could be substantial delay in resolving these claims.   The Action was first filed in October 2008, and its relatively early resolution benefits the entire Class by saving the resources necessary to bring this Action to trial and potential subsequent appeals.   When viewing the substantial immediate benefit to the Class in contrast to the numerous risks inherent in continuing to

prosecute this Action, the Settlement is fair, reasonable and adequate.  *See In re Syncor ERISA Litig.*, 516 F.3d at 1101; *Nat'l Rural Telecom. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless settlement is clearly inadequate, approval is preferable to lengthy and expensive litigation with uncertain results.").

### 4.  The Risk, Expense, Complexity, and Likely Duration of the Litigation Supports Final Approval

Final approval is also supported by the risk, expense, complexity, and likely duration of the Action.  *See Torrisi*, 8 F.3d at 1376 ("[T]he cost, complexity and time of fully litigating the case all suggest that this settlement was fair.").  In fact, "in most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telcoms. Coop.*, 221 F.R.D. at 526.

As discussed above and in the accompanying Lieberman Decl., Class Plaintiffs faced risks associated with establishing scienter as well as overcoming Defendants' potentially debilitating defenses to loss causation and damages, the resolution of which would depend upon conflicting expert testimony.  *See Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 337 (S.D.N.Y. 2005), *aff'd in part, vacated in part, remanded by*, *Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ("If this case were to be tried, both sides would be heavily dependent on . . . experts, further compounding the expense and complexity of this case.").  Moreover, if the Settlement had not been reached, both sides would bear the costs and duration of continued litigation (*e.g.*, class certification, fact and expert discovery, summary judgment, including *Daubert* motions, trial, and the appeals that would likely follow).

With respect to discovery alone, Lead Counsel would anticipate, given the complexities of the issues involved in this Action, reviewing hundreds of thousands—potentially millions—of additional pages of documents and taking many more depositions, including depositions of third parties.  Following the close of merits

discovery, the parties would engage in expert discovery—often the most costly phase of complex litigation—which likely would require each side to retain damage experts, as well as additional experts in the accounting industry.  Given Class Plaintiffs' uncertain prospects of success in further litigation, obtaining a settlement at this time provides tangible and certain relief to the Class, "without subjecting them to the risks, complexity, duration and expense of continuing litigation."  *In re Global Crossing SEC & ERISA Litig.*, 225 F.R.D. 436, 456-57 (S.D.N.Y. 2004).  Thus, this factor also supports final approval of the Settlement.

### 5.   The Extent of Discovery Completed and the Stage of the Proceedings Supports Final Approval

The proceedings in this Action were sufficiently advanced to provide Class Plaintiffs with a thorough understanding of the strengths and weaknesses of the Class's claims.  In particular, as described herein, two separate motions to dismiss were briefed by the parties and adjudicated by the Court.  *See, e.g.*, *In re Genta Sec. Litig.*, 2008 U.S. Dist. LEXIS 41658, at *10 (D.N.J. May 28, 2008) ("The motion to dismiss resolved many of the issues raised in the Amended Complaint, leaving Lead Plaintiffs and Defendants . . . with a solid understanding of the strengths and weaknesses of their respective positions.").   Moreover, Class Plaintiffs filed their Motion for Class Certification, which was opposed by Defendants after taking discovery and depositions of Class Plaintiffs in connection thereto.  In addition, substantial discovery was taken by Class Plaintiffs before and after the parties achieved an agreement in principle to settle the Action.  Lieberman Decl. ¶¶ 40-46.

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact.  It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation . . . .  At minimum, the court must possess sufficient information to raise its decision above mere conjecture."  4 Alba Conte,

17

Herbert B. Newberg, NEWBERG ON CLASS ACTIONS §11.45, at 127, 128 (4th ed. 2002); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (holding that it is not necessary for court to find parties engaged in extensive discovery; it must merely find that they engaged in sufficient investigation to enable court to make intelligent appraisal of case).

Class Plaintiffs had a clear picture of the strengths and weaknesses of this case and of the legal and factual defenses that Defendants would likely raise at trial. *Teachers' Ret. Sys. of La. v. A.C.L.N.*, No. 01-CV-11814 (MP), 2004 U.S. Dist. LEXIS 8608, at *3 (S.D.N.Y. May 14, 2004) (finding action had advanced to a stage where parties "have a clear view of the strengths and weaknesses of their cases") (quotation and citation omitted).   As such, Class Plaintiffs and their counsel had sufficient information to intelligently negotiate the terms of the Settlement.  Therefore, the Court should find that this factor also supports the Final Approval.

**6.      The Experience and Views of Counsel Support Final Approval**

Based on an exhaustive review of the relevant factors in this case, Lead Counsel is satisfied that the Settlement is fair, reasonable, adequate and in the best interests of the Class.  In such circumstances, counsel's view is accorded significant deference.  "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation . . . .  Thus, 'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'"  *Nat'l Rural Telecoms. Coop.*, 221 F.R.D. at 528 (citations omitted); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10, 1992) (finding counsel's belief that proposed settlement represented most beneficial result for class compelling factor in its approval); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989), *aff'd sub nom., Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992).

18

Lead Counsel, Pomerantz Haudek Grossman & Gross LLP, has extensive experience and a stellar reputation in the field of class action and securities litigation. *See* Exhibit D to the Declaration of Patrick V. Dahlstrom in Support of Rand's Motion to Be Appointed Lead Plaintiff and Approval of Lead Counsel and Liason Counsel.  (Doc. No. 10.)  As discussed herein, this Action has been vigorously litigated.  Moreover, Lead Counsel conducted extensive confirmatory discovery after the parties achieved an agreement in principle.

Thus, Lead Counsel's opinion regarding the fairness and adequacy of the Settlement deserves great weight because of its familiarity with the issues involved in this Action and because of its extensive experience in securities class action litigation. *Washington Pub. Power Supply*, 720 F. Supp. at 1392 (citing *Officers*, 688 F.2d at 625); *see also Schwartz v. TXU Corp.*, No. 02-2243-K, 2005 U.S. Dist. LEXIS 27077, at *72 (N.D. Tex. Nov. 8, 2005) ("[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'") (internal citation omitted).

### 7. The Risk of Maintaining the Class Action Through Trial Supports Final Approval

Here, the Class has been certified only for settlement purposes.  (Doc. No. 141 ¶ 4).  Moreover, but for this Settlement, Defendants likely would have continued to contest any motion for class certification and, if certified, would have sought any opportunity to have the class de-certified.  *See Omnivision*, 559 F. Supp. 2d at 1041 (noting that even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").  In addition, even if the Court certified this Action as a class action, the Court may re-assess its decision at any time prior to judgment.  *See In re Heritage Bond Litig.*, MDL No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *35–36 (C.D. Cal.

June 10, 2005) (addressing the possibility of decertification or modification of a class). Thus, the Settlement avoids any uncertainty with respect to class certification. Moreover, as discussed above, Class Plaintiffs faced substantial risk of having the action terminated at the summary judgment stage in light of the serious loss causation and scienter defenses at Defendants' disposal.

### 8. The Absence of Fraud or Collusion Also Supports Final Approval

Finally, the Settlement is not the product of collusion.  The parties engaged in months of arm's-length settlement negotiations prior to reaching a tentative agreement to settle the Action, followed by additional months of negotiations over the terms of the Settlement and related documents.   Lieberman Decl. ¶¶ 40-46; Politan Decl. ¶¶ 3-8. Moreover, at all times during the negotiations and drafting of the Settlement papers, Lead Counsel zealously advocated Class Plaintiffs' position, with the best interest of the Class paramount during such negotiations.  Likewise, counsel for Defendants vigorously advanced Defendants' position throughout these negotiations as well.  *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (finding settlement involved neither fraud nor collusion where it was product of arm's length negotiations and hard-fought litigation by experienced counsel on both sides).  Absent a Settlement, Lead Counsel was prepared to continue prosecuting the Action through trial and any subsequent appeals.

In sum, Class Plaintiffs respectfully submit that the analyses set forth above and all of the circumstances of the Settlement demonstrate that the Settlement is fair, reasonable and adequate and warrants the Court's final approval.

### IV.   THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR CLASS CERTIFICATION UNDER RULE 23

By its Preliminary Approval Order, the Court preliminarily certified the Class for purposes of this Settlement only.  (Doc. No. 141 ¶ 4.)  Class Plaintiffs now seek final

certification of the Class, consisting of all persons or entities that purchased or otherwise acquired Medicis common stock, or who purchased and/or sold options on Medicis common stock, from October 30, 2003 to September 23, 2008, both dates inclusive (the "Class Period"), and were damaged.[8]   Nothing has changed to cast doubt on the propriety of the Court's preliminary certification of the Class.

In order for a class to be certified, the requirements of Rule 23 must generally be satisfied.[9]  *Hanlon*, 150 F.3d at 1019 (citing *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 613 (1997)).   Trial manageability, however, is not a factor to consider when deciding whether to certify a settlement class, because there will be no trial.  *Amchem*, 521 U.S. at 620.  Moreover, "the law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws."  *In re THQ, Inc., Sec. Litig.*, No. CV-001783 AHM (EX), 2002 U.S. Dist. LEXIS 7753, at *8-9 (C.D. Cal. Mar. 22, 2002) (internal citations omitted); *see also Yamner v. Boich*, No. C-92-20597 RPA, 1994 U.S. Dist. LEXIS 20849, at *6 (N.D. Cal. Sept. 15, 1994) ("The Ninth Circuit favors a liberal use of class actions to enforce federal securities laws.").   As demonstrated below, each of Rule 23's requirements are readily met in this Action.

---

[8]  Excluded from the Class are the Defendants and the current and former officers and directors of the Company, their immediate families, their heirs, successors, or assigns, and any entity controlled by any such person.  Also excluded from the Class are those persons who timely and validly request exclusion from the Class pursuant to the Notice.

[9]  Fed. R. Civ. P. 23(a)(1) – (4) provides the following prerequisites that must be satisfied before a class can be certified:  (1) the class must be so numerous that joinder of all members is impracticable, (2) questions of law or fact that are common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  In addition, common questions of law or fact must predominate over questions that affect only individual members of the class, and a class action must be found to be superior to other available methods of adjudication.  Fed. R. Civ. P. 23(b)(3).

## A.   Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members would be impracticable.  To date, the Settlement Administrator has mailed more than 110,000 Notices to potential Class Members.  *See* Fraga Decl. ¶ 6.  Joinder of such a great number of persons would be exceedingly difficult and impracticable.  Thus, Rule 23(a)(1) is easily satisfied.  *In re Verisign, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13, 2005) ("[N]umerosity is a prerequisite which plaintiffs generally . . . satisfy very easily.").

## B.   Commonality

Rule 23(a)(2) requires that the grievances of the named plaintiffs share a common question of law or of fact with those of the proposed class.  Here, issues common to the Class include whether: (1) defendants made material misrepresentations and omissions in Medicis's financial reports; (2) defendants acted with the requisite scienter; (3) Medicis's stock was inflated by such misconduct during the Class Period; and (4) Class members suffered a loss when partial and more complete disclosures about the fraud were made. Accordingly, this case easily meets the second requirement of Fed. R. Civ. P. 23(a)(2).  *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) ("[t]he overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the common question requirement.").

## C.   Typicality

Rule 23(a)(3)'s typicality requirement concerns whether the same course of events gave rise to each class member's claims and whether the members make similar legal arguments in support of liability.  The typicality requirement is liberally construed and does not require that the claims be identical.  *Verisign* at *20 ("'The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members

have been injured by the same conduct.'") (citations omitted).  Here, the issue of whether Class Plaintiffs sustained losses in Medicis common stock as a result of Defendants' alleged misconduct rises or falls on the same set of facts as those of other Class members.  Their claims are therefore typical of the Class.  Thus, the typicality requirement of Rule 23(a)(3) is satisfied.

### D.   <u>Adequacy</u>

The Rule 23(a)(4) requirement that "the representative parties will fairly and adequately protect the interests of the class" is unquestionably met here.  "This factor requires:  (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class; and (2) that Plaintiffs are represented by qualified and competent counsel."  *Dukes v. Wal Mart Stores*, 603 F.3d 571, 614 (9th Cir. 2010).  Both elements are satisfied in this case.

Class Plaintiffs have a large financial stake in this litigation, expressed a desire to prosecute this Action, and actively monitored the litigation throughout.  They retained counsel with extensive experience in the class action arena, which has vigorously and skillfully prosecuted this Action, securing for the Class a substantial recovery.  Class Plaintiffs, therefore, are adequate representatives of the Class, and their counsel are qualified, experienced, and capable of prosecuting this Action.  Accordingly, the requirements of Rule 23(a)(4) have been met.

### E.   <u>Common Questions Predominate</u>

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 608 (1997).  As discussed above, Class Plaintiffs allege that Defendants engaged in a common course of fraudulent conduct to artificially inflate the price of Medicis stock.  Because liability can be determined on a class-wide basis, and,

therefore, issues common to the Class predominate over any individual issues, the predominance requirement of Rule 23(b)(3) is satisfied.

### F.    Superiority of The Class Action

Rule 23(b)(3) also requires that the class action be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Here, the potential Class Members number in the hundreds of thousands, and are dispersed throughout the country. In addition, most of those injured have not been damaged to a degree where it would be cost-effective for them to seek recovery on their own. Accordingly, certification of the Class is appropriate.

In its April 2, 2010 Order of Preliminary Approval, the Court conditionally certified the Class for purposes of settlement. Because, as demonstrated above, all the requirements for class certification have been met, and in light of the substantial benefits the Settlement confers on the Class, Class Plaintiffs respectfully request that the Court now grant this Action final class certification for the purposes of the Settlement. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) (settlement classes permissible).

## V.    THE PLAN OF ALLOCATION SHOULD BE APPROVED

The Court has broad discretion in approving the Plan of Allocation. *See Class Plaintiffs*, 955 F.2d at 1284. The standard for approval of a plan of allocation is the same as the standard for approving the settlement as a whole: the plan must be fair, reasonable and adequate. *Id*. Further, an allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *38. Here, Lead Counsel prepared the Plan of Allocation after careful consideration and with the assistance and analysis of a consulting damages expert. Lieberman Decl. ¶¶ 56-60. The Plan of Allocation was fully disclosed in the Notice that was mailed to more than 110,000 potential Class members, and as of the filing of this memorandum, not a single Class member has filed an objection to the Plan

24

1   of Allocation.  *See Maywalt v. Parker & Parsley Petroleum Co.*, No. 92-1152 (RWS),

2   1997 U.S. Dist. LEXIS 97, at *11-12 (S.D.N.Y. Jan. 6, 1997) (stating that lack of

3   objections to plan of allocation is an important factor in evaluating the plan).

4         The Plan of Allocation fully comports with the criteria set forth in case law

5   governing the approval of such allocations.  It has a "reasonable" and "rational basis,"

6   makes intra-Class allocations based upon the "relative strengths and weaknesses of class

7   members' individual claims and the timing of purchases and sales of the securities at

8   issue," and was formulated by Class Plaintiffs and their counsel in consultation with

9   damages experts.  *In re Charter Communs., Inc.*, MDL No. 1506, 2005 U.S. Dist.

10   LEXIS 14772, at *33-34 (E.D. Mo. June 30, 2005).

11         The Plan of Allocation provides for the distribution of the Net Settlement Fund to

12   Class Members who purchased or otherwise acquired Medicis common stock and

13   purchased or sold options during the Class Period, based on their Recognized Loss as

14   calculated pursuant to the Plan of Allocation.  A Recognized Loss is not intended to be

15   an estimate of the amount that a Class member lost or might have been able to recover

16   after a trial; nor is it an estimate of the amount that will be paid to Authorized Claimants

17   pursuant to the Settlement.  Instead, the Net Recognized Loss formula is simply the basis

18   upon which the Net Settlement Fund will be proportionately distributed to Authorized

19   Claimants.

20         In determining the Recognized Loss per share, the Plan of Allocation takes into

21   account the net declines in the price of Medicis common stock and Medicis stock options,

22   respectively, on September 24, 2008, the ability to prove loss causation, and the likelihood

23   of success on the merits.  This method provides a reasonable basis to conclude that each

24   Class member's recovery is based upon the relative losses they sustained as a result of

25   Defendants' allegedly false and misleading statements, and treats all Class members

26   similarly.  *See In re Broadcom Corp. Sec. Litig.*, Case No. SACV 01-275 DT (MLGx),

27

28

2005 U.S. Dist. LEXIS 41976, at *17 (C.D. Cal. Sept. 12, 2005) (approving plan of allocation where the allocation was pro rata across the Class).   Accordingly, Class Plaintiffs believe that this method of allocation has a reasonable and rational basis, is fair and equitable, and therefore warrants the Court's approval.

## VI.   NOTICE TO THE SETTLEMENT CLASS COMPLIED WITH DUE PROCESS

Rule 23(e) provides that "notice of the proposed dismissal or compromise [of a class action] shall be given to all members of the class in such manner as the court directs."   The purpose of the notice is to "afford members of the class due process which, in the context of the [R]ule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)).   The Notice program utilized here, as set by the Preliminary Approval Order, easily meets this standard.

The Notice program was carried out by the Claims Administrator, GCG, a nationally recognized notice and claims administration firm, under the supervision of Lead Counsel.   Fraga Decl. ¶¶ 2-7.   GCG provided individual notice via first-class mail to each member of the Class whose address was reasonably ascertainable.   In addition, GCG caused the Summary Notice to be transmitted over *Business Wire*.   The Notice amply describes the terms of the Settlement, the claims at issue, the releases, the process for objecting and opting out of the Settlement, and how to make a claim.   Lieberman Decl. ¶ 4. These disclosures are more than sufficient to satisfy due process.   *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977) (holding that notice must contain "an adequate description of the proceedings written in objective, neutral terms, that . . . may be understood by the average absentee class member").

## CONCLUSION

Based on the foregoing, Class Plaintiffs respectfully request that the Court enter an order and judgment:  (i) granting final approval of the proposed Settlement and Plan of Allocation; (ii) finally certifying the proposed Class for purposes of the Settlement; (iii) finding that notice to the Class satisfied due process; and (iv) entering the proposed Judgment and Order of Dismissal with Prejudice of this Action.

Respectfully submitted this 19th day of January 2012.

POMERANTZ HAUDEK
  GROSSMAN & GROSS LLP

By:  /s/ Jeremy A. Lieberman
Marc I. Gross
Jeremy A. Lieberman (*admitted pro hac vice*)
R. James Hodgson (*admitted pro hac vice*)
100 Park Avenue - 26th Floor
New York, New York 10017
Telephone:    (212) 661-1100
Facsimile:    (212) 661-8665

POMERANTZ HAUDEK
  GROSSMAN & GROSS LLP
Patrick V. Dahlstrom (*admitted pro hac vice*)
Ten South LaSalle Street - Suite 3505
Chicago, Illinois  60603
Telephone:    (312) 377-1181
Facsimile:    (312) 377-1184

MARTIN & BONNETT, PLLC
Susan Martin (AZ# 014226)
Jennifer Kroll (AZ# 019859)
1850 North Central Avenue, Suite 2010
Phoenix, Arizona  85004
Telephone:    (602) 240-6900
Facsimile:    (602) 240-2345

*Attorneys for Lead Plaintiff Steven Rand and Plaintiff Darlene Oliver*

27